2006-NMCA-137

145 P.3d 110

**Lorie PADILLA, individually and as Personal Representative of the Estate of Joseph M. Padilla, Plaintiff–Appellee,**

v.

**WALL COLMONOY CORPORATION and Daniel Nazzarett, Defendants–Appellants.**

**No. 25,638.**

Court of Appeals of New Mexico.

Sept. 11, 2006.

As Revised Oct. 31, 2006.

James A. Branch, Jr., Law Office of James A. Branch, Jr., LLC, Ronald T. Taylor, Ronald Taylor Law Office, Albuquerque, NM, for Appellee.

Kerri L. Allensworth, Foster Johnson McDonald Lucero Koinis, Albuquerque, NM, for Appellants.

Daniel P. Ulibarri, O'Brien & Ulibarri, P.C., Albuquerque, NM, for Amicus Curiae N.M. Defense Lawyers Association.

Randi McGinn, Albuquerque, NM, Caren I. Friedman, Santa Fe, NM, for Amicus Curiae N.M. Trial Lawyers Association.

## OPINION

FRY, Judge.

{1} This workplace tort case presents the question of whether our Supreme Court's decision in *Delgado v. Phelps Dodge Chino, Inc.*, 2001–NMSC–034, 131 N.M. 272, 34 P.3d 1148, applies to acts or omissions that are alleged to have occurred before that decision was issued. Unpersuaded that retroactivity would be unfair to employers or that the presumption of retroactivity is overcome by other considerations, we conclude that a worker may sue in tort using *Delgado's* test for non-accidental injury, regardless of when the acts or omissions occurred. Therefore, we affirm the district court's decision denying the employer's motion to dismiss for failure to state a claim under Rule 1–012(B)(6) NMRA.

## BACKGROUND

{2} The relevant facts are taken from the allegations of the complaint filed by Plaintiff Lorie Padilla on behalf of herself and as personal representative of the estate of her husband, Joseph M. Padilla (collectively referred to as Worker), which we accept as true for purposes of reviewing a motion to dismiss. *Callahan v. N.M. Fed'n of Teachers–TVI*, 2006–NMSC–010, ¶ 4, 139 N.M. 201, 131 P.3d 51. Worker worked for Defendant Wall Colmonoy Corporation (Employer) from approximately 1979 to 1991. Worker's daily tasks for ten of those years included "receiving, bottling and shipping toxic [metal] powders and materials" in Employer's shipping department. This resulted in substantial exposure to substances that Worker claims Employer knew at the time were hazardous to human health, including powdered nickel and chromium.

{3} In 2001, our Supreme Court decided *Delgado*, which defined workplace injuries that were intentional or willful, and therefore non-accidental, and that could support suit in tort outside of New Mexico's workers' compensation scheme. *See* 2001–NMSC–034, ¶ 1, 131 N.M. 272, 34 P.3d 1148. In 2002, Worker sought medical treatment for breathing difficulty and was diagnosed with usual interstitial pulmonary disease. Worker alleges that his treating physician has deter-

mined that the inhalation of the toxic powders was the cause of his illness. Worker filed suit against Employer in 2004 alleging various tort claims including negligence and intentional infliction of emotional distress. Worker died later in 2004 from his illness, and the district court granted a motion to amend the complaint to substitute Worker's estate as the plaintiff, and to add a claim for wrongful death.

{4} In his suit, Worker alleges that Employer failed to provide protective equipment, safety training, or safe working conditions in spite of known risks from the Employer's products, and that Employer violated various health and safety regulations. Worker also alleges that Employer dismissed Worker's attempts to raise health concerns, and that Employer only took action to comply with health and safety regulations when an inspection was expected. Worker has described Employer's conduct as "willful and intentional" and, therefore, Worker claims that Employer's culpability rises to the level described in *Delgado* for a workplace tort claim that falls outside of the exclusivity provisions of the Workers' Compensation Act (the "Act"), NMSA 1978, §§ 52–1–1 to–70 (1929, as amended through 2005).

{5} In response to Worker's suit, Employer moved for dismissal on the ground that the exclusivity provision in the Act bars a claim for negligence. In particular, Employer argued to the district court, and argues now on appeal, that because Worker alleges acts or omissions pre-dating the *Delgado* decision, the willfulness test articulated in *Delgado* does not apply. Thus, Employer implicitly argues that a more restrictive test, the so-called "actual intent to harm" test, applies to this case. The district court denied the motion to dismiss but authorized an interlocutory appeal on the question of which standard applies to acts or omissions occurring before *Delgado* was decided. This Court granted the request for an interlocutory appeal pursuant to NMSA 1978, § 39–3–4 (1999) and Rule 12–203(A) NMRA. In addition, this Court granted motions for amicus briefing from the New Mexico Trial Lawyers Association and New Mexico Defense Lawyers' Association.

## DISCUSSION

{6} This case squarely presents the question of which standard governs a claim for a workplace tort allegedly occurring prior to the date our Supreme Court issued the *Delgado* decision. This Court has previously assumed without deciding that *Delgado* applies retroactively. *Dominguez v. Perovich Props., Inc.,* 2005–NMCA–050, ¶ 23, 137 N.M. 401, 111 P.3d 721. We conclude that *Delgado's* test for when a workplace injury is non-accidental, and therefore outside of the scope of the Act, should apply to acts or omissions taking place prior to the date of the *Delgado* decision.

■ {7} Despite some dispute below, the parties appear to agree on appeal that Defendants' motion to dismiss was argued and decided under Rule 1–012(B)(6). Granting a motion for dismissal under Rule 1–012(B)(6) is appropriate only if Plaintiff is not entitled to recover under any theory of the facts alleged in the complaint. We review the denial of a motion to dismiss de novo because such a motion tests the legal sufficiency of the allegations. *See Padwa v. Hadley,* 1999–NMCA–067, ¶ 8, 127 N.M. 416, 981 P.2d 1234 (describing de novo review for the grant of a motion to dismiss for failure to state a claim); *Thompson v. Montgomery & Andrews, P.A.,* 112 N.M. 463, 464, 816 P.2d 532, 533 (Ct.App. 1991) (stating that "[a] Rule 12(B)(6) motion tests the legal sufficiency of the complaint, not the facts that support it"). The question of whether a judicial decision should be given retroactive effect is also subject to de novo review. *Stein v. Alpine Sports, Inc.,* 1998–NMSC–040, ¶ 6, 126 N.M. 258, 968 P.2d 769.

{8} To provide context, we begin with a brief review of *Delgado* and its impact on workers' compensation law in New Mexico. We then turn to the presumption of retroactivity and whether *Delgado* should be applied to acts or omissions occurring before that decision was issued.

### 1. Delgado's Impact

{9} New Mexico's workers' compensation system is intended to replace litigation for accidental workplace injuries with a comparatively rapid and efficient system for com-

pensation that disregards the fault of the employer or worker. *See Delgado*, 2001–NMSC–034, ¶ 12, 131 N.M. 272, 34 P.3d 1148; *Morales v. Reynolds*, 2004–NMCA–098, ¶ 6, 136 N.M. 280, 97 P.3d 612. For such an accidental injury, the administrative system created by the Act is a worker's exclusive remedy, and the worker may not sue the employer in court. *Id.;* § 52–1–8 (stating that an employer who has complied with the Act will not be subject to any other liability to an employee). However, the Act does not cover injuries that are not considered "accidents." *Delgado*, 2001–NMSC–034, ¶ 20, 131 N.M. 272, 34 P.3d 1148; *Morales*, 2004–NMCA–098, ¶ 7, 136 N.M. 280, 97 P.3d 612. The distinction between an accidental injury and a non-accidental injury is therefore critical because an employee may sue in tort for a non-accidental injury. *Id.* Our Supreme Court changed the law when, in *Delgado*, it altered the test for when a worker could show that his injury was not an accident. *Morales*, 2004–NMCA–098, ¶ 8, 136 N.M. 280, 97 P.3d 612 (stating that "[i]n *Delgado,* our Supreme Court broadened the scope of the accident exception with respect to employers").

{10} Prior to the decision in *Delgado*, an employer could only be sued outside the scope of the Act's exclusivity provision if the injured worker could show that the employer had an actual intent to injure the worker. *See Dominguez*, 2005–NMCA–050, ¶ 12, 137 N.M. 401, 111 P.3d 721; *Morales*, 2004–NMCA–098, ¶ 7, 136 N.M. 280, 97 P.3d 612. *See generally* Mariposa Padilla Sivage, *Workers' Compensation: Exclusivity, Common Law Remedies, and the Reconsideration of the Actual Intent Test—Delgado v. Phelps Dodge Chino, Inc.*, 32 N.M. L.Rev. 567, 572–77 (2002) (tracing the development of the scope of exclusivity under the Act). Thus, for an injury to be non-accidental under the actual intent test, a worker had to prove the employer "intended a deliberate infliction of harm upon the employee." *Delgado*, 2001–NMSC–034, ¶ 16, 131 N.M. 272, 34 P.3d 1148 (internal quotation marks omitted). As a practical matter, this standard provided employers with "virtually absolute immunity" even when sending a worker to "certain harm or death." *Id.* ¶ 18.

{11} In *Delgado,* our Supreme Court held that, contrary to legislative intent, the actual-intent-to-harm test improperly favored employers and concluded that a worker may sue an employer in tort when an employer "willfully or intentionally injures a worker." *Id.* ¶¶ 1, 17. The Court set out a three-part willfulness test to determine when a workplace injury is non-accidental and therefore outside of the scope of the Act. *Id.* ¶ 1. Such a non-accidental injury arises when:

> (1) the worker or employer engages in an intentional act or omission, without just cause or excuse, that is reasonably expected to result in the injury suffered by the worker; (2) the worker or employer expects the intentional act or omission to result in the injury, or has utterly disregarded the consequences; and (3) the intentional act or omission proximately causes the injury.

*Id.* ¶ 26. In *Morales*, this Court used terms like "egregious" or "extreme employer conduct" to describe the kind of employer error or omission for which a worker should be allowed to sue in tort. 2004–NMCA–098, ¶¶ 13, 16, 136 N.M. 280, 97 P.3d 612. In *Delgado*, our Supreme Court made clear that even under the broader willfulness test, it was still describing intentional torts and not negligence. 2001–NMSC–034, ¶ 30, 131 N.M. 272, 34 P.3d 1148. *Delgado's* new rule did not impact cases alleging mere negligence. *Morales*, 2004–NMCA–098, ¶ 27, 136 N.M. 280, 97 P.3d 612.

**2. Applicability of Retroactivity**

{12} Against this backdrop, we now turn to the rules on retroactive application of a judicial decision. Absent an express statement that limits a decision to prospective application, our Supreme Court has established the "presumption that a new rule adopted by a judicial decision in a civil case will operate retroactively." *Beavers v. Johnson Controls World Servs., Inc.*, 118 N.M. 391, 398, 881 P.2d 1376, 1383 (1994). However, this presumption can be overcome if the guidelines articulated in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), *overruled by Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 96–97, 113 S.Ct.

2510, 125 L.Ed.2d 74 (1993), provide sufficient justification for avoiding retroactive application. *Beavers,* 118 N.M. at 398, 881 P.2d at 1383. These guidelines or factors are summarized as: "(1) whether the case creates a new principle *of* law that has been relied upon; (2) the prior history of the rule; and (3) the inequity of retroactive application." *Stein,* 1998–NMSC–040, ¶ 9, 126 N.M. 258, 968 P.2d 769. For the reasons that follow, we are not persuaded that any of the *Chevron Oil Co.* factors overcome the presumption of retroactivity.

{13} We note at the outset that our Supreme Court expressed no concern about retroactively applying its decision to the employer in *Delgado,* even though the employer in that case had no reason to know that the actual intent test would be abandoned. *Delgado* contains no express declaration that its rule was to be limited to any type of prospective operation. *Delgado* was decided after *Beavers,* and therefore we presume that our Supreme Court would have expressly indicated any reservations about applying its decision retroactively. Because of this, the rule in *Delgado* has presumptive retroactivity. *Beavers,* 118 N.M. at 398, 881 P.2d at 1383. We now turn to an examination of each *Chevron Oil Co.* factor.

■ {14} The first *Chevron Oil Co.* factor has two parts: an evaluation of whether a new principle of law has been announced by overruling past precedent and an evaluation of the extent to which the parties or others may have relied on the state of the law before the law-changing decision was issued. *Stein,* 1998–NMSC–040, ¶¶ 10, 11, 126 N.M. 258, 968 P.2d 769. We conclude that *Delgado* did announce a new rule of law because our Supreme Court said its decision "narrowed" the scope of the Act's exclusivity and expressly overruled those cases applying the actual-intent-to-injure test. *Delgado,* 2001–NMSC–034, ¶¶ 23 n. 3, 30, 131 N.M. 272, 34 P.3d 1148; *see also Morales,* 2004–NMCA–098, ¶ 8, 136 N.M. 280, 97 P.3d 612 (stating that *Delgado* "broadened the scope of the accident exception with respect to employers").

■ {15} Even though *Delgado* changed the law, we must also consider the degree of the parties' reliance on the pre-existing law. *Beavers,* 118 N.M. at 399, 881 P.2d at 1384. In *Beavers,* our Supreme Court stated that "[t]he extent to which the parties in a lawsuit, or others, may have relied on the state of the law before a law-changing decision has been issued can hardly be overemphasized." *Id.* "The reliance interest to be protected by a holding of nonretroactivity is strongest in commercial settings, in which rules of contract and property law may underlie the negotiations between or among parties to a transaction." *Id.* While the workplace is of course a "commercial setting" in the general sense, and while employment is contractual in nature, by attempting to sue outside of the Act, Worker is attempting to prove an intentional tort. Thus, we think it crucial that our Supreme Court stated that "[i]n the tort context, however, a party's reliance interest is seldom as strong as it is in the commercial context" and that "the purposes of tort law do not give rise, generally, to reliance-based conduct," given the purposes of compensation to the victim and deterrence of the tortfeasor. *Id.* at 399–400, 881 P.2d at 1384–85. Reliance is a weighty concern where property rights or contract-type issues are involved. *State ex rel. Martinez v. City of Las Vegas,* 2004–NMSC–009, ¶ 53, 135 N.M. 375, 89 P.3d 47 (holding that a water rights doctrine "was likely to induce reliance in the area of commercial transactions"); *Stein,* 1998–NMSC–040, ¶ 11 n. 3, 126 N.M. 258, 968 P.2d 769 (finding reliance on a procedural rule and equating procedural rules to contractual rules). However, *Beavers* counsels that an intentional tortfeasor has no right to rely on law that he thought would shield his wrongful actions. 118 N.M. at 400, 881 P.2d at 1385. *Delgado* made clear that the Act was not "ever intended to immunize employers from liability for intentional torts." 2001–NMSC–034, ¶ 30, 131 N.M. 272, 34 P.3d 1148. Because we are dealing with an employer's intentional torts, we are not persuaded that any reliance would be disturbed by applying *Delgado* retroactively.

■ {16} In connection with its argument that it relied on the prior actual-intent-to-harm test, Employer also argues that it was unable to insure against a *Delgado*-type in-

tentional tort claim at the time Worker was employed, so it would be unfair to permit retroactive application. We are unpersuaded. Again, our Supreme Court emphasized that even after it had "narrowed" the scope of exclusivity, only "intentional torts" were beyond the exclusivity provisions of the Act. *Id.* Generally, one is not able to insure against an intentional tort. *See Ranger Ins. Co. v. Bal Harbour Club, Inc.,* 549 So.2d 1005, 1007 (Fla.1989) (stating that "[i]t is axiomatic in the insurance industry that one should not be able to insure against one's own intentional misconduct"); *Tippmann v. Hensler,* 716 N.E.2d 372, 380 (Ind.1999) (explaining, in a workers' compensation case, that Indiana "generally denies the ability to insure against" intentional torts (internal quotation marks and citation omitted)); *see also Knowles v. United Servs. Auto. Ass'n.,* 113 N.M. 703, 707, 832 P.2d 394, 398 (1992) (noting "the public policy that an insured not be encouraged to act wrongfully because of knowledge that such an act is insured").

{17} We recognize that in its discussion of reliance in *Beavers,* our Supreme Court did mention a business's ability to acquire insurance, citing *Lopez v. Maez,* 98 N.M. 625, 651 P.2d 1269 (1982). In *Lopez,* the Supreme Court changed an existing common law rule by holding that a tavern owner has a duty to third parties not to serve alcohol to intoxicated persons. *Id.* at 630–31, 651 P.2d at 1274–75. In deciding to apply the rule only prospectively and to the case before it, the Court touched upon reliance by tavern owners on the prior state of the law and their inability to acquire insurance to cover expanded liability for such negligence. *Id.* at 632, 651 P.2d at 1276. We are not convinced that *Lopez* militates against retroactivity here because *Lopez* was imposing a new common law duty on tavern operators against which they could insure. In *Delgado,* our Supreme Court emphasized that employers have *never* been free to intentionally injure workers. 2001–NMSC–034, ¶ 30, 131 N.M. 272, 34 P.3d 1148 (stating that the Act was not "ever intended to immunize employers from liability for intentional torts"). Thus, unlike *Lopez,* we do not think *Delgado* imposed a substantial new duty upon employers for which they could obtain insurance.

{18} For the first time in its reply brief on appeal, Employer attempts to expand its insurance-related argument by arguing that, even if it could not insure against liability for its intentional conduct, retroactive application of *Delgado* would be unfair because it would expose Employer to uninsured liability for defending against *unfounded* claims brought under *Delgado.* Employer contends that "employers must obtain insurance not only for liability for well founded claims but also for unfounded claims, upon which liability will never attach." We decline to address this argument for two reasons. First, Employer did not make this argument in the district court. *See Crutchfield v. N.M. Dep't of Taxation & Revenue,* 2005–NMCA–022, ¶ 14, 137 N.M. 26, 106 P.3d 1273 ("To preserve error for review, a party must fairly invoke a ruling of the district court on the same grounds argued in this Court."). Employer argued only that it obtained insurance and paid premiums based on the pre-*Delgado* actual intent standard and that retroactive application "deprive[s Employer] of the opportunity to obtain insurance necessary to cover such claims." As a result, Employer did not give Worker the opportunity to respond to, or the district court the chance to rule on, the specific argument it now makes. *See Diversey Corp. v. Chem–Source Corp.,* 1998–NMCA–112, ¶ 38, 125 N.M. 748, 965 P.2d 332 (explaining that preservation serves the purposes of (1) allowing the trial court an opportunity to correct any errors, thereby avoiding the need for appeal, and (2) creating a record from which the appellate court can make informed decisions). Second, we "will not consider arguments raised for the first time in a reply brief." *State v. Castillo–Sanchez,* 1999–NMCA–085, ¶ 20, 127 N.M. 540, 984 P.2d 787.

{19} Not being persuaded by Employer's other arguments, we think the first *Chevron Oil Co.* factor is neutral. Even though *Delgado* clearly articulated a new rule, there was no right to rely on the actual-intent-to-harm test's protection for intentionally tortious conduct.

{20} The second *Chevron Oil Co.* factor determines "whether retrospective operation will further or retard its operation" of the rule, considering the new rule's history, purpose, and effect. *Stein*, 1998–NMSC–040, ¶ 9, 126 N.M. 258, 968 P.2d 769 (internal quotation marks and citation omitted); *Beavers*, 118 N.M. at 398, 881 P.2d at 1383. Employer and Amicus New Mexico Defense Lawyers' Association argue that retroactive application of *Delgado* would impede the Act's purpose of promoting efficient resolution of workplace injury cases because it would expand the number of cases falling outside the Act. This argument begs the question. Our Supreme Court in *Delgado* defined the scope of the Act by reference to legislative mandate so that the Act favors neither employers nor employees. 2001–NMSC–034, ¶ 23, 131 N.M. 272, 34 P.3d 1148. Again, the Court stated that "we do not believe that the Act was *ever* intended to immunize employers from liability for intentional torts." *Id.* ¶ 30 (emphasis added). Employer's argument—that we should allow more intentional tort cases to fall within the scope of the Act in order to promote efficient settlement of those claims—requires us to reject or ignore *Delgado's* conclusion that such cases were never intended to be subject to the Act in the first place. We are not persuaded that we can give effect to the Act or advance its objectives by ignoring its boundaries. Were we to apply *Delgado* only prospectively, we would be thwarting the intention of the legislature to treat workers and employers equally, and we would be disregarding our Supreme Court's guidance on the proper scope of the Act. We conclude this factor weighs in favor of retroactive application, particularly in light of a core principle underlying the *Beavers* decision that similarly situated parties be treated equally. 118 N.M. at 402, 881 P.2d at 1387. We cannot see favoring one employer over another simply because one happened to have committed an intentional tort before 2001.

{21} The final *Chevron Oil Co.* factor requires an evaluation of the inequity, injustice, or hardship that would be imposed upon parties by the retroactive application of a new rule. *Beavers*, 118 N.M. at 398, 881 P.2d at 1383. Employer implies that impos-ing *Delgado* retroactively would be fundamentally unfair and would unleash a torrent of claims for acts or omissions that took place long ago. Amicus Defense Lawyers' Association contends that "[i]njustice and hardship would inure for both employers and employees if *Delgado* were to be applied retroactively" and that such an application would create a "virtual quagmire of litigation" for the district courts. We disagree. As the Supreme Court noted in *Delgado*, the newer willfulness rule did not impose a hardship upon employers, and even if it did, the rule was much needed. 2001–NMSC–034, ¶¶ 30–31, 131 N.M. 272, 34 P.3d 1148. The Act continues to provide the exclusive remedy for an employer's negligent acts or omissions, and thus, if an employer's acts or omissions predating *Delgado* were merely negligent, the worker may not sue. *Morales*, 2004–NMCA–098, ¶ 27, 136 N.M. 280, 97 P.3d 612. Our cases have set a relatively high threshold for willful workplace torts that are beyond the scope of the Act. *Id.* ¶¶ 17, 24. We therefore doubt that there will be a large number of cases where a worker will successfully state a *Delgado*-type claim. We also observe that our statute of limitations for tort actions will limit the number of actions that can be brought for pre–2001 acts or omissions to those presumably uncommon cases where the claimant did not discover the injury until recently. *See* NMSA 1978, § 37–1–8 (1976) (stating the three-year statute of limitations for personal injury).

{22} An evaluation of inequity also involves consideration of reliance on the prior rule. *Beavers*, 118 N.M. at 401, 881 P.2d at 1386. As noted above, however, we think any reliance on the actual-intent-to-harm test is either misplaced or unreasonable. In addition, *Beavers* emphasized an evaluation of fairness not only to defendants but also to claimants, and the "potential unfairness to *other* claimants who have been victimized by conduct occurring before the law-changing decision but who for one reason or another have not asserted their claims until after announcement of the new rule." *Id.* at 402, 881 P.2d 1387. We think it would be unfair to workers injured willfully by employers to deny them a claim based only on the date of

the act or omission. Thus, the third *Chevron Oil Co.* factor also does not weigh against retroactive application.

## CONCLUSION

{23} We affirm the denial of Employer's motion to dismiss Worker's claim and conclude that the willfulness rule from *Delgado* may be applied retroactively because none of the *Chevron Oil Co.* factors, either alone or combined, outweigh the presumption of retroactivity. We express no opinion about the merits of Worker's claim and leave evaluation of whether Worker has stated a claim that meets the three-prong test of *Delgado* to the district court.

{24} **IT IS SO ORDERED.**

WE CONCUR: A. JOSEPH ALARID and JAMES J. WECHSLER, Judges.