# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: **JUNE 22, 2015**

**Nos. 33,104 & 33,675 (Consolidated)**

**NOE RODRIGUEZ,**

  Worker-Appellant,

v.

**BRAND WEST DAIRY, uninsured employer and UNINSURED EMPLOYER'S FUND, statutory payor,**

  Employer/Insurer-Appellees,

**Consolidated With**

**MARIA ANGELICA AGUIRRE,**

  Worker-Appellant,

v.

**M.A. & SONS CHILI PRODUCTS and FOOD INDUSTRY SELF INSURANCE FUND OF NEW MEXICO,**

  Employer/Insurer-Appellees.

**APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION**
**Victor S. Lopez and David L. Skinner, Workers' Compensation Judges**

New Mexico Center on Law & Poverty
Gail Evans
Maria Martinez Sanchez
Albuquerque, NM

for Appellants

Hector H. Balderas, Attorney General
Santa Fe, NM
Richard J. Crollett, Special Assistant Attorney General
Albuquerque, NM

for Appellee Uninsured Employers Fund

Maestas & Suggett, P.C.
Paul Maestas
Albuquerque, NM

for Appellees and Amicus Curiae New Mexico Cattle
Growers' Association, New Mexico Farm and Livestock
Bureau, Dairy Producers of New Mexico and Dairy
Farmers of New Mexico

**OPINION**

**ZAMORA, Judge.**

{1}     In these consolidated appeals, Workers challenge the dismissals of their workers' compensation claims, which were based on the portion of the Workers' Compensation Act, NMSA 1978, §§ 52-1-1 to -70 (1929, as amended through 2013), excluding farm and ranch laborers from its coverage. *See* § 52-1-6(A) ("The provisions of the Workers' Compensation Act shall not apply to employers of . . . farm and ranch laborers." (the exclusion)). The question presented is whether the exclusion violates Workers' rights to equal protection under Article II, Section 18 of the New Mexico Constitution. Holding that the exclusion does violate Workers' rights to equal protection, we reverse and remand for further proceedings.

**BACKGROUND**

{2}     Workers each suffered work-related injuries working as farm and ranch laborers. Worker Aguirre was injured picking chile for M.A. & Sons Chili Products. Worker Rodriguez was injured working for Brand West Dairy as a dairy worker and a herdsman. Workers each sought workers' compensation benefits. Both claims were dismissed pursuant to the exclusion. Workers filed separate appeals challenging the constitutionality of the exclusion. The cases were consolidated on appeal.

**DISCUSSION**

{3} Workers challenge the constitutionality of the exclusion, claiming that it violates equal protection guarantees. Workers also contend that dismissal of their respective claims for compensation was precluded by a previous district court decision that declared the exclusion to be unconstitutional, *Griego v. New Mexico Workers' Compensation Administration*, Second Jud. Dist. No. CV 2009-10130, and a subsequent memorandum opinion of this Court that did not reverse that decision. *Griego v. New Mexico Workers' Compensation Administration*, No. 32,120, memo op. (N.M. Ct. App. Nov. 25, 2013) (non-precedential). M.A. & Sons Chili Products and Food Industry Self Insurance Fund of New Mexico (collectively, M.A. & Sons) argue that the exclusion does not violate equal protection guarantees, while Brand West Dairy and the State of New Mexico Uninsured Employer's Fund (collectively, Brand West) take no position on the constitutionality of the exclusion. All Employers/Insurers agree that the *Griego* decisions do not control in this case.

**I.     The *Griego* Decisions**

{4} *Griego* involved a constitutional challenge to the exclusion. *Griego*, No. 32,120, memo op. ¶ 2. An injured worker was denied workers' compensation benefits pursuant to the exclusion. The worker attempted to challenge the constitutionality of the exclusion before a Workers' Compensation Judge (WCJ); however, WCJs do not

2

have authority to rule on the constitutionality of statutes. *Chevron Res. ex rel. Blatnik v. N.M. Superintendent of Ins.*, 1992-NMCA-081, ¶ 19, 114 N.M. 371, 838 P.2d 988. Nonetheless, the worker requested that he be allowed to make the argument in order to make a record for the purposes of an appeal on the constitutional issue.

{5}    Subsequently, the worker, joined by two individual plaintiffs and two organizational plaintiffs, brought a declaratory action against the Workers' Compensation Administration (the WCA) and its director, seeking a declaration that the exclusion violated the workers' right to equal protection. *Griego*, No. 32,120, memo op. ¶ 2. The plaintiffs also requested that the WCA be required to re-open the individual plaintiffs' claims and to stop relying on the exclusion to deny claims. *Id.* The district court concluded that the exclusion was unconstitutional and ordered the WCA to re-open the individual plaintiffs' claims. *Id.* ¶ 3.

{6}    The WCA appealed to this Court, arguing that the district court lacked both jurisdiction over the individual plaintiffs' claims and the authority to order the WCA to re-open the claims. *Id.* ¶ 6. The WCA did not explicitly challenge the district court's determination regarding the constitutionality of the exclusion. *Id.* ¶ 7. We concluded that the issues on appeal were moot because the individual plaintiffs had settled their claims with the WCA. *Id.* ¶¶ 8-9. Since the WCA failed to appeal the district court's ruling as to the constitutional issue, that issue was not properly before

3

us and, as a result, we held that the district court's declaration was final and binding on the WCA. *Id.* ¶¶ 9-10. The appeal was dismissed. *Id.* ¶ 12.

{7}     Here, Workers argue that the district court's declaration in *Griego* that the exclusion is unconstitutional, coupled with the holding of our subsequent memorandum opinion, is binding on WCJs, as part of the WCA, and precludes disposition of any workers' compensation claims pursuant to the exclusion. We need not determine whether the district court's determination in *Griego* was binding in the present cases. Any attempt at such an analysis is not necessary to our decision and would only result in an advisory opinion, which we decline to give. *See City of Las Cruces v. El Paso Elec. Co.*, 1998-NMSC-006, ¶ 18, 124 N.M. 640, 954 P,2d 72 (stating that appellate courts avoid rendering advisory opinions). The WCJs in the present cases refused to recognize the district court's determination in *Griego* in light of a 1980 decision by this Court that appeared to hold that the exclusion was constitutional. *Cueto v. Stahmann Farms, Inc.*, 1980-NMCA-036, ¶ 8, 94 N.M. 223, 608 P.2d 535 (stating, without explanation, that the exclusion did not deny the worker equal protection). We therefore take this opportunity to clarify that *Cueto* has no precedential effect and to determine conclusively that the exclusion is unconstitutional.

4

## II. *Cueto*'s Equal Protection Holding is Dictum

{8} To the extent the WCJs concluded that the constitutionality of the exclusion was resolved by this Court in *Cueto*, we disagree. In *Cueto*, the dispositive issue on appeal was whether the worker was a farm laborer as defined by the exclusion. *Id.* ¶ 5. It is not clear from our decision that the statute's constitutionality was squarely before us in that case. *See id.* ¶ 8 ("[The worker] *seems to argue* that the exemption is unconstitutionally vague [and] *seems to argue* that the exemption denies him equal protection." (Emphasis added.)). We summarily rejected what we surmised may have been a constitutional challenge by the worker. *See id.* ("[The exclusion] does not [violate equal protection]; the exemption is not arbitrary, but has a reasonable basis."). We note that to the extent that the statute's constitutionality was not squarely before us in *Cueto*, its determination is dictum. *Fernandez v. Farmers Ins. Co.*, 1993-NMSC-035, ¶ 15, 115 N.M. 622, 857 P.2d 22 ("[C]ases are not authority for propositions not considered." (internal quotation marks and citation omitted)).

{9} We also note that *Cueto* was decided prior to our Supreme Court's "modern articulation" of the rational basis level of scrutiny, and it did not employ the same standard of review to the constitutionality of the statute as is required by our courts today. *See Trujillo v. City of Albuquerque*, 1998-NMSC-031, ¶ 14, 125 N.M. 721, 965 P.2d 305 ("To successfully challenge a statute under the rational basis test, a

5

plaintiff is required to show that the statute's classification is not rationally related to the legislative goal.).

**III.    Constitutionality of the Exclusion**

{10}    Workers contend that the exclusion is unconstitutional because it violates their right to equal protection. We review the constitutionality of legislation de novo. *Rodriguez v. Scotts Landscaping*, 2008-NMCA-046, ¶ 8, 143 N.M. 726, 181 P.3d 718. We presume that the challenged legislation is constitutional and "will not question the wisdom, policy, or justness of legislation enacted by our Legislature." *Id.* (internal quotation marks and citation omitted).

{11}    The New Mexico Constitution provides that no person shall be denied equal protection of the laws. N.M. Const. art. II, § 18. Equal protection guarantees that similarly situated individuals will be treated in an equal manner, "absent a sufficient reason to justify the disparate treatment." *Wagner v. AGW Consultants*, 2005-NMSC-016, ¶ 21, 137 N.M. 734, 114 P.3d 1050. Thus, "statutory classifications that are unreasonable, unrelated to a legitimate statutory purpose, or are not based on real differences" do not comport with equal protection guarantees. *Breen v. Carlsbad Mun. Schs.*, 2005-NMSC-028, ¶ 7, 138 N.M. 331, 120 P.3d 413 (internal quotation marks and citation omitted). "The threshold question in analyzing all equal protection challenges is whether the legislation creates a class of similarly situated individuals

who are treated dissimilarly." *Id.* ¶ 10. If Workers establish that, as a result of a legislative classification, they have suffered dissimilar treatment from those who are similarly situated, we then determine what level of scrutiny to apply to the challenged legislation. *Id.* ¶ 8.

**A.    Disparate Treatment of Similarly Situated Individuals**

{12}    Workers contend that farm and ranch laborers are similarly situated to other workers within the state. More specifically, Workers contend that farm and ranch laborers, who primarily harvest crops or work with animals and are excluded from workers' compensation coverage, are similarly situated with other agricultural workers who are not excluded. M.A. & Sons claim that this Court has already determined that workers who primarily harvest crops or work with animals are not similarly situated, relying on our decisions in *Tanner v. Bosque Honey Farm, Inc.*, 1995-NMCA-053, 119 N.M. 760, 895 P.2d 282 and *Holguin v. Billy the Kid Produce, Inc.*, 1990-NMCA-073, 110 N.M. 287, 795 P.2d 92. M.A. & Sons' reliance on these decisions is misplaced.

{13}    Both *Tanner* and *Holguin* involved the same sole issue of whether specific agricultural duties fall within the statutory definition of farm or ranch labor such that the farm and ranch laborers exclusion would apply. *See Tanner*, 1995-NMCA-053, ¶¶ 1, 11-12 (holding that a worker assisting in the harvesting of honey was a farm

7

laborer under the exclusion); *Holguin*, 1990-NMCA-073, ¶¶ 1, 20-21 (holding that a worker whose primary duties were filling and stacking sacks of onions prior to shipment was not a farm laborer under the exclusion and ordering that the worker's claim be reinstated). The distinction drawn in each of these cases between farm laborers and other agricultural workers serves only to define farm labor under Section 52-1-6(A). It does not inform our analysis of whether the two groups of workers are similarly situated for equal protection purposes. *Fernandez*, 1993-NMSC-035, ¶ 15 ("[C]ases are not authority for propositions not considered." (internal quotation marks and citation omitted)).

{14} In determining whether the two classes of workers are similarly situated, "we must look beyond the classification to the purpose of the law." *Griego v. Oliver*, 2014-NMSC-003, ¶ 30, 316 P.3d 865 (internal quotation marks and citation omitted); *see Corn v. N.M. Educators Fed. Credit Union*, 1994-NMCA-161, ¶ 16, 119 N.M. 199, 889 P.2d 234, *overruled on other grounds by Trujillo*, 1998-NMSC-031.

{15} In 1929, our workers' compensation law did not expressly exclude agricultural laborers from workers' compensation coverage; however, agricultural laborers were deemed excluded because agricultural pursuits were not included in the enumerated list of extra-hazardous occupations covered by the statute. *Compare* NMSA 1929, § 156-110 (1929), *with* § 52-1-6(A). *See Koger v. A. T. Woods, Inc.*, 1934-NMSC-

8

020, ¶¶ 7-9, 38 N.M. 241, 31 P.2d 255. In 1937, the Legislature added a provision explicitly excluding farm and ranch laborers from workers' compensation coverage. 1937 N.M. Laws, ch. 92, § 2. From 1937 until 1975, farm and ranch laborers were "excluded from compensation benefits both by the explicit exclusion and by the failure to include agricultural labor as an extra[-]hazardous occupation." *Varela v. Mounho*, 1978-NMCA-086, ¶ 6, 92 N.M. 147, 584 P.2d 194. In 1975, the extra-hazardous occupation requirement was repealed. 1975 N.M. Laws, ch. 284, § 14. However, the explicit exclusion of farm and ranch laborers from workers' compensation coverage has remained substantively unchanged. *See* 1989 N.M. Laws, ch. 263, § 5; 1987 N.M. Laws, ch. 260, § 1; 1979 N.M. Laws, ch. 368, § 4; 1975 N.M. Laws, ch. 284, § 3; 1973 N.M. Laws, ch. 240, § 2; 1971 N.M. Laws, ch. 253, § 1; 1971 N.M. Laws, ch. 261, § 2; 1959 N.M. Laws, ch. 67, § 2; 1953 N.M. Laws, ch. 87, § 1; 1937 N.M. Laws, ch. 92, § 2; NMSA 1941, § 57-904 (1937).

{16}    Our review of the history of the workers' compensation statutes back to 1929 has not revealed an articulable purpose for the exclusion. The purpose of the Workers' Compensation Act (the Act) as a whole is to provide "quick and efficient delivery of indemnity and medical benefits to injured and disabled workers at a reasonable cost to the employers who are subject to [its] provisions." NMSA 1978, § 52-5-1 (1990). "One policy factor of great concern is that *any* judicial analysis

9

under the Act must balance equally the interests of the worker and the employer without showing bias or favoritism toward either." *Salazar v. Torres*, 2007-NMSC-019, ¶ 10, 141 N.M. 559, 158 P.3d 449 (emphasis added); *see* § 52-5-1 (stating that the Act is not to be interpreted "in favor of the claimant or employee on the one hand, nor are the rights and interests of the employer to be favored over those of the employee on the other hand"). Workers who are unable to perform work duties due to an accident arising out of and in the course of employment are eligible to receive compensation. *Breen*, 2005-NMSC-028, ¶ 10. The stated purpose of the Act is not served by creating classifications among the state's workers.

{17}	Excluding farm and ranch laborers from workers' compensation coverage denies them the benefits, including but not limited to the monetary benefits, that the Act was intended to provide. It also circumvents the policy and philosophy of the Act—to balance the interests and rights of the worker and the employer. *See Salazar*, 2007-NMSC-019, ¶ 10. The exclusion tips the scale in favor of employers. Employers of farm and ranch laborers have the option to elect to be subject to the Act while that option is not available to farm and ranch laborers. Section 52-1-6(B). Employers of farm and ranch laborers avoid the cost of providing workers' compensation insurance, which results in expensive drawn out litigation being the only available option to the worker. While the exclusion exposes the employers to tort liability, the injured

10

workers are less likely to pursue a tort claim. *See Salazar*, 2007-NMSC-019, ¶ 16 (recognizing that many injured workers "are not in a financial position to wait out a lengthy, expensive, and risky court proceeding to be compensated for the injury, due to the problems of pressing medical bills, and often the inability to work" and would benefit from workers' compensation (internal quotation marks and citation omitted)). Employers, on the other hand, may be in a better position to plan for and manage the additional cost of providing coverage.

{18} We conclude that farm and ranch laborers seeking compensation are similarly situated to other workers in the state who are likewise seeking compensation; both groups consist of workers suffering work-related injuries or disabilities who are in need of indemnity and medical benefits.

{19} The farm and ranch laborers exclusion creates classifications of workers that are not based on real differences. In the general context of farm labor, workers who perform tasks essential to the cultivation of crops are excluded from coverage, whereas workers performing tasks incidental to farming, such as processing crops, are included. *See Holguin*, 1990-NMCA-073, ¶ 13 (holding that farm labor excluded from workers compensation coverage does not include "all things incident to farming" (internal quotation marks and citation omitted)); *Cueto*, 1980-NMCA-036, ¶ 9 (holding that farm labor includes duties essential to the cultivation of crops).

{20} The statute similarly distinguishes between workers who care for and train animals as an intrinsic part of a farm and ranch operation and other workers performing similar duties. *See* § 52-1-6.1 (stating that " 'farm and ranch laborers' shall include those persons providing care for animals in training for the purpose of competition or competitive exhibition. Employees of a veterinarian and laborers at a treating facility or a facility used solely for the boarding of animals, which is not an intrinsic part of a farm or ranch operation, are not covered by this provision"). Not only do these distinctions created by the exclusion fail to serve the stated purpose, policy, and philosophy of the Act, but these distinctions also result in dissimilar treatment of similarly situated workers. Accordingly, we must determine whether the "disparate treatment . . . is sufficiently justified such that it does not violate equal protection." *Rodriguez*, 2008-NMCA-046, ¶ 13.

**B.    Constitutional Standard of Review**

{21} "There are three levels of equal protection review based on the New Mexico Constitution: rational basis, intermediate scrutiny[,] and strict scrutiny." *Breen*, 2005-NMSC-028, ¶ 11. The level of scrutiny applied depends on "the nature and importance of the individual interests asserted and the relationship between the statutorily created classification and the importance of the governmental interest

12

involved." *Rodriguez*, 2008-NMCA-046, ¶ 14 (alteration, internal quotation marks, and citation omitted).

{22} Rational basis review is the "most deferential to the constitutionality of the legislation." *Breen*, 2005-NMSC-028, ¶ 11. The party challenging the legislation bears the burden of proving that it "is not rationally related to a legitimate governmental purpose." *Id.* (alteration, internal quotation marks, and citation omitted). This level of scrutiny is applied to "general social and economic legislation that does not affect a fundamental or important constitutional right or a suspect or sensitive class." *Id.* Where the challenged legislation impacts "important but not fundamental rights, or sensitive but not suspect classifications, intermediate scrutiny is warranted." *Wagner*, 2005-NMSC-016, ¶ 12. Applying intermediate scrutiny, the State must demonstrate that the statute is substantially related to an important governmental purpose. *Id.* Strict scrutiny review is applied where laws draw suspect classifications or impact fundamental rights. *Id.* Under a strict scrutiny standard, the state must show "that the provision at issue is closely tailored to a compelling government purpose." *Id.*

{23} The parties in this case do not dispute that strict scrutiny is inapplicable in this case. Workers and M.A. & Sons seem to agree that rational basis review is appropriate in this case. However, to the extent that Workers argue that intermediate

13

scrutiny would also be applicable, we disagree. Intermediate scrutiny review is appropriate where "the challenged legislation (1) restrict[s] the ability to exercise an important right[,] or (2) treat[s] the person challenging the constitutionality of the legislation differently because they belong to a sensitive class." *Rodriguez*, 2008-NMCA-046, ¶ 15 (alteration, internal quotation marks, and citation omitted).

{24} Workers do not argue that the benefits conferred under the Act are important rights in the constitutional sense. Instead, they suggest that farm and ranch laborers are members of a sensitive class as a result of being historically mistreated by employers and having a lack of political power "which also has a racial and ethnic overtone." This generalized argument does not provide any basis to conclude that Workers belong to a sensitive class with respect to the exception, and it is insufficient to trigger intermediate scrutiny review. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (stating that this Court will not consider unclear or undeveloped arguments). Having no basis to conclude that Workers belong to a sensitive class, we review the constitutionality of the exclusion applying the rational basis test.

**C.      The Exclusion is Not Rationally Related to a Legitimate State Interest**

{25} We presume that legislative acts are valid and are typically subject to rational basis review. *See Valdez v. Wal-Mart Stores, Inc.*, 1998-NMCA-030, ¶ 13, 124 N.M.

14

655, 954 P.2d 87. Though deferential to the constitutionality of the statute, this level of scrutiny is not a "rubber stamp for challenged legislation." *Wagner*, 2005-NMSC-016, ¶ 24 (internal quotation marks omitted). Under the rational basis test, Workers must demonstrate that the legislative classification is not rationally related to a legitimate state goal. *See id.*; *Valdez*, 1998-NMCA-030, ¶ 10.

{26}    The Legislature's principal objectives in enacting the Act were: "(1) maximizing the limited recovery available to injured workers, in order to keep them and their families at least minimally financially secure; (2) minimizing costs to employers; and (3) ensuring a quick and efficient system." *Wagner*, 2005-NMSC-016, ¶ 25. M.A. & Sons argues that the exclusion serves these objectives by: (1) simplifying the administration of the workers' compensation system and (2) protecting the state's agricultural industry from additional overhead costs. Workers contend that the exclusion is arbitrary and irrational and that the relationship between the purported state interests and the statutory classification created by the exclusion does not survive rational basis scrutiny.

{27}    To successfully challenge the statute under rational basis scrutiny, a worker must demonstrate that the classification created by the legislation is not supported by evidence in the record or a firm legal rationale. *Id.* ¶ 24. In these consolidated appeals, Worker did not have the opportunity to create a factual record to support

15

their constitutional challenge of the exclusion because the WCJ "does not have the authority to determine the constitutionality of a statutory enactment." *Montez v. J & B Radiator, Inc.*, 1989-NMCA-060, ¶ 7, 108 N.M. 752, 779 P.2d 129; *see Chevron*, 1992-NMCA-081, ¶ 19 (same). Accordingly, the lack of a factual record is not fatal to Workers' constitutional argument if Workers can demonstrate that the exclusion is not supported by a firm legal rationale. *See Montez*, 1989-NMCA-060, ¶ 7 (addressing the worker's claim that a statute was facially unconstitutional despite the lack of preservation and, implicitly a factual record); *see also Chevron*, 1992-NMCA-081, ¶¶ 19, 21-24 (analyzing the worker's constitutional challenge based solely on legal rationale in the absence of a factual record).

{28}     As Workers point out, the exclusion is arbitrary on its face and as applied. Legislative classifications must be based on "real differences of situation or condition" that are related to the statutory purpose. *Burch v. Foy*, 1957-NMSC-017, ¶ 10, 62 N.M. 219, 308 P.2d 199. Under the exclusion, workers whose primary duties are essential to the cultivation of crops are considered farm laborers, while workers involved primarily in the processing of the same crops are not. *See Cueto*, 1980-NMCA-036, ¶¶ 9, 10. This distinction is seemingly without purpose or reason and leads to absurd results. In some instances, employees working for the same agricultural employer may not all be covered under the Act. For example, workers

16

involved in irrigation, fertilization, and harvesting crops are not covered under the Act, while workers who sort, pack, and ship the very same crops are. *See Holguin*, 1990-NMCA-073, ¶ 20. We fail to see any real differences between workers who fall under the statutory definition of a farm and ranch laborer and workers who do not. We also fail to see any real differences between farm and ranch laborers and all other workers in New Mexico that would justify the exclusion.

{29}   We are not persuaded by M.A. & Sons' contention, that simplifying the administration of the workers' compensation system and protecting the State's agricultural industry from additional overhead costs justify the arbitrary classification created by the exclusion. *See Plyler v. Doe*, 457 U.S. 202, 227 (1982) ("[A] concern for the preservation of resources standing alone can hardly justify the classification used in allocating those resources."); *see also Schirmer v. Homestake Min. Co.*, 1994-NMSC-095, ¶¶ 8-9, 118 N.M. 420, 882 P.2d 11 (holding that the challenged statute was "unconstitutional notwithstanding its rational relationship to the valid legislative goal of lowering employer costs" because the resulting legislative classification was arbitrary and was not "based upon some substantial or real distinction" instead of "artificial or irrelevant differences"); *Halliburton Co. v. Prop. Appraisal Dep't*, 1975-NMCA-123, ¶ 25, 88 N.M. 476, 542 P.2d 56 (holding that a tax statute based on

17

administrative convenience alone did not survive rational basis scrutiny and violated equal protection guarantees).

{30} The classification created by the exclusion is also under-inclusive. "Discriminatory legislation is under-inclusive if the classification does not include all of those who are similarly situated with respect to the purpose of the law." *Griego*, 2014-NMSC-003, ¶ 60. As to the purported state interest in efficient administration of workers' compensation cases, the legislation is under-inclusive because the statutes do not exclude all transient or mobile workers from coverage. And as to the purported state interest in protecting the agricultural industry from the cost of providing workers' compensation coverage, the legislation is under-inclusive because it does not exclude all agricultural workers.

{31} We conclude that there is no substantial relationship between the exclusion and the purported government interests of increased workers' compensation efficiency and lower costs for the agricultural industry. There is nothing rational about a law that excludes from worker's compensation benefits employees who harvest crops from the field while providing benefits for the employees who sort and bag the very same crop. *See Madrid v. St. Joseph Hosp.*, 1996-NMSC-064, ¶ 34, 122 N.M. 524, 928 P.2d 250 (stating that equal protection guarantees "prohibit the government from creating statutory classifications that are unreasonable, unrelated to a legitimate statutory

18

purpose, or are not based on real differences"). Moreover, excluding farm and ranch laborers from workers' compensation coverage directly controverts the purpose and evenhanded philosophy of the Act by placing farm and ranch employers at an advantage and denying workers the benefits the Act was intended to provide. Legislative classifications that are arbitrary and oppressive without any rational basis are the most objectionable. *Burch*, 1957-NMSC-017, ¶ 12.

**IV.    Modified Prospective Application of This Opinion**

{32}    Because we have declared the exclusion to be unconstitutional, we address M.A. & Sons' argument that we apply our holding prospectively. Our courts have adopted a presumption that new rules imposed by judicial decisions in civil cases will apply retroactively. *Beavers v. Johnson Controls World Servs., Inc.*, 1994-NMSC-094, ¶ 22, 118 N.M. 391, 881 P.2d 1376. However, this presumption can be overcome where sufficient justification exists for avoiding retroactive application. *Padilla v. Wall Colmonoy Corp.*, 2006-NMCA-137, ¶ 12, 140 N.M. 630, 145 P.3d 110. To determine whether retroactive application is justified we consider: "(1) whether the case creates a new principle of law that has been relied upon[,] (2) the prior history of the rule[,] and (3) the inequity of retroactive application." *Id.* (internal quotation marks and citation omitted).

19

{33}     "Under the first factor, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed." *Jordan v. Allstate Ins. Co.*, 2010-NMSC-051, ¶ 27, 149 N.M. 162, 245 P.3d 1214 (internal quotation marks and citation omitted). "The extent to which the parties in a lawsuit, or others, may have relied on the state of the law before a law-changing decision has been issued can hardly be overemphasized." *Beavers*, 1994-NMSC-094, ¶ 27. "The reliance interest to be protected by a holding of nonretroactivity is strongest in commercial settings, in which rules of contract and property law may underlie the negotiations between or among parties to a transaction." *Id.* ¶ 28.

{34}     Since 1937, our statutes have expressly excluded farm and ranch laborers from workers' compensation coverage. Our holding in this case sets forth a new principle of law, not clearly foreshadowed by our previous decisions. Until now, employers of farm and ranch laborers have legitimately relied on the exclusion's constitutionality. Their reliance interest weighs in favor of prospective application because, in a general sense, the workplace is a commercial setting and employment is of a contractual nature. *Padilla*, 2006-NMCA-137, ¶ 15.

{35} The second factor considers the new rule's history, purpose, and effect to determine whether retroactive application will further its operation. *Id.* ¶ 20. As we discussed earlier, the purpose of the Act is to provide quick and efficient benefits to injured and disabled workers at a reasonable cost to employers. Section 52-5-1. The application of the Act's provisions should balance the interests and rights of workers and employers. *Salazar*, 2007-NMSC-019, ¶ 10. Our decision in this case seeks to further both the purpose of the Act as well as its underlying philosophy of evenhandedness, which retroactive application may achieve to some degree.

{36} However, we must also consider the third factor, "the inequity imposed by retroactive application, for where a decision of [an appellate court] could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the injustice or hardship by a holding of nonretroactivity." *Jordan*, 2010-NMSC-051, ¶ 29 (internal quotation marks and citation omitted). In this circumstance, retroactive application of our decision would be analogous to the enactment of a retroactive statute, which is generally disfavored in New Mexico. *See* NMSA 1978, § 12-2A-8 (1997) ("A statute or rule operates prospectively only unless the statute or rule expressly provides otherwise[,] or its context requires that it operate retrospectively."); *see also Hill v. Vanderbilt Capital Advisors, LLC*, 834 F. Supp. 2d 1228, 1262 (D.N.M. 2011) ("A retrospective law affects acts, transactions, or

occurrences that happened before the law came into effect and impairs vested rights, requires new obligations, imposes new duties, or affixes new disabilities to past transactions."). Here, retroactive application would impose new obligations and duties on employers of farm and ranch laborers and their insurers, and it would also impact the interests of the Uninsured Employers' Fund as well as the Food Industry Self Insurance Fund of New Mexico.

{37}   Nevertheless, the WCA was on notice that the district court in *Griego* had declared the exclusion to be unconstitutional on March 30, 2012, and did not appeal that ruling. Therefore, acknowledging the inequity of denying benefits to workers whose claims were asserted after the date of the district court decision in *Griego*, we conclude that this Opinion's holding shall apply to workers' claims that were pending as of March 30, 2012, and that were filed thereafter.

**CONCLUSION**

{38}   For the foregoing reasons, we reverse the dismissals of the Workers' compensation claims and remand for proceedings consistent with this Opinion.

{39}   **IT IS SO ORDERED.**

_____
**M. MONICA ZAMORA, Judge**

22

**I CONCUR:**

 

_____
**CYNTHIA A. FRY, Judge**

**MICHAEL E. VIGIL, Chief Judge (dissenting in part, specially concurring in part).**

**VIGIL, Chief J., dissenting in part, specially concurring in part.**

{40}    Workers' first argument on appeal is that dismissal of their claims was precluded by the declaratory judgment in *Griego.* The majority fails to address this argument.  Without providing a sufficient reason for doing so, the majority simply declares, "We need not determine whether the district court's determination in *Griego* was binding in the present cases." Majority Opinion ¶ 7. I dissent from this proposition. Further, I respectfully submit that by answering Workers' fully preserved argument, we are not issuing an advisory opinion.

{41}    In *Griego*, three individual plaintiffs and two organizational plaintiffs brought a declaratory judgment action against the WCA and its director (WCA) contending that the farm and ranch laborers exclusion in the Workers' Compensation Act violated their right to equal protection of the law under Article II, Section 18 of the New Mexico Constitution. *Griego*, No. 32,120, memo op. ¶ 2. (I do not cite to *Griego* for any precedential purposes, but only for the facts it discloses). The district court held that the exclusion was unconstitutional, and the WCA appealed. *Id*. ¶ 3. The WCA's appeal only challenged the district court's jurisdiction over the individual plaintiffs' claims on two grounds:  (1) that they should have pursued an appeal from the WCA instead of filing a separate declaratory judgment action; and (2) that the district court did not have authority to order the WCA to re-open the individual

24

plaintiffs' claims for consideration on their merits. *Id.* ¶¶ 6-7. The WCA did not challenge the district court's jurisdiction over the claims of the organizational plaintiffs, nor did the WCA attack the district court's determination of unconstitutionality. *Id*. ¶ 7.

{42}     The WCA and individual plaintiffs settled, rendering moot the issues raised on appeal by the WCA. *Id*. ¶ 8. Nevertheless, the individual plaintiffs argued that the appeal should not be dismissed as moot, because the WCA continued to urge that it was not bound to enforce the district court judgment declaring the exclusion unconstitutional. *Id.* The WCA maintained that the district court judgment invited "chaos" because it appeared to conflict with *Cueto*, and WCJs would have to choose whether to follow the district court judgment or *Cueto*. *Id.* ¶ 10. We rejected the WCA's assertion.  We pointed out that the district court had considered *Cueto* and determined that it was inapposite and distinguishable. *Id.* Therefore, we said, "As a party to the declaratory judgment action, the WCA is bound by the district court's ruling." *Id.* We also added that if the WCA believed that the district court had ruled contrary to precedent, its remedy was to seek appellate review of that decision. *Id.* ¶ 11.  Having chosen not to do so, we concluded, the WCA "cannot now escape the effect of unchallenged parts of the district court's decision." *Id.* Because the issues raised on appeal were moot, the WCA's appeal was dismissed. *Id.* ¶ 12.

{43}    There can be no doubt that the district court judgment declaring the farm and ranch laborers exclusion in the Workers' Compensation Act unconstitutional is binding on the WCA. "The doctrine of issue preclusion prevents a party from re-litigating ultimate facts or issues actually and necessarily decided in a prior suit." *State ex rel. Peterson v. Aramark Corr. Servs., LLC*, 2014-NMCA-036, ¶ 34, 321 P.3d 128 (internal quotation marks and citation omitted). The four elements required to apply issue preclusion are satisfied in this case. Those elements are:

> (1) the party to be estopped was a party to the prior proceeding, (2) the cause of action in the case presently before the court is different from the cause of action in the prior adjudication, (3) the issue was actually litigated in the prior adjudication, and (4) the issue was necessarily determined in the prior litigation.

*Id*. The WCA fully litigated the constitutional issue in *Griego* and having lost, deliberately chose not to appeal that issue. Thus, the WCA and WCJs were legally obligated to follow and apply the declaratory judgment to these cases. The declaratory judgment does not tell WCJs of the WCA how to decide any case on its merits; it only precludes enforcement of the farm and ranch laborers exclusion. Moreover, the refusal of the WCJs to follow and apply the declaratory judgment on the basis that *Cueto* was conflicting authority was improper because the applicability of *Cueto* was resolved in the very action in which the declaratory judgment was rendered, and no appeal was taken on the constitutional question. *See State ex rel. Maloney v. Sierra*,

1970-NMSC-144, ¶¶ 8-11, 82 N.M. 125, 477 P.2d 301 (stating that the portion of a declaratory judgment on a constitutional question that was not challenged on appeal was final).

{44}  The majority's failure to specifically determine that the *Griego* declaratory judgment is binding on the WCA in these cases is troubling. It encourages a litigant not to comply with a final declaratory judgment rendered against it and to relitigate the same issue in a new case. It also implies that a final judgment rendered against a party in a prior case has no effect on appeal, even if the prior judgment was against the same party and resolved the same issue. This dilutes settled principles of finality and implies that a district court declaratory judgment does not merit recognition and enforcement. I therefore dissent from the majority's statement that "We need not determine whether the district court's determination in *Griego* was binding in the present cases." Majority Opinion ¶ 7.

{45}  Whether *Griego* is binding on the employers and insurers in these cases presents another question because they were not parties in the *Griego* litigation. Our Declaratory Judgment Act specifically states, that "no declaration shall prejudice the rights of persons not parties to the proceeding." NMSA 1978, Section 44-6-12 (1975); *see Gallegos v. Nevada Gen. Ins. Co.*, 2011-NMCA-004, ¶ 21, 149 N.M. 364, 248 P.3d 912 (stating that the Declaratory Judgment Act "forbids a party from being

prejudiced by a declaratory action to which he was not a party"). Thus, if the WCA and WCJs had properly complied with the *Griego* declaratory judgment in these cases, and the WCJ's determined that Workers were entitled to workers' compensation benefits, the employers and insurers could have appealed from that decision and argued that the farm and ranch laborers exclusion is not unconstitutional. On this basis, I specially concur in the result, because I agree with the majority's analysis of the constitutional question and with modified prospective application set forth in parts III and IV of the majority opinion.

**MICHAEL E. VIGIL, Chief Judge**

28