2008-NMCA-046

181 P.3d 718

**Abelardo RODRIGUEZ,
Worker–Appellant,**

v.

**SCOTTS LANDSCAPING and Build-
ers Trust of New Mexico, Em-
ployer/Insurer–Appellees.**

No. 26,929.

Court of Appeals of New Mexico.

March 5, 2008.

Max Houston Proctor, Hobbs, NM, for Appellant.

Yenson, Lynn, Allen & Wosick, P.C., Matthew L. Connelly, April D. White, Albuquerque, NM, for Appellees.

## OPINION

BUSTAMANTE, Judge.

{1} Worker appeals from a compensation order finding that Worker could not receive his compensation award as a lump sum payment under NMSA 1978, § 52-5-12 (2003). The question presented in this appeal is whether Section 52-5-12 violates the Equal Protection Clauses of the United States and New Mexico Constitutions. Concluding that Section 52-5-12 does not violate Worker's right to equal protection, we affirm.

## BACKGROUND

{2} On October 22, 2003, Worker injured his back in the course and scope of his employment as a landscaping laborer. As a result of the injury, Worker suffered a herniated disc and back pain. Employer/Insurer paid for medical treatment for Worker's injury, including surgery for the herniated disc. On March 8, 2005, Dr. Anthony Reeve placed Worker at maximum medical improvement (MMI) and assigned Worker a permanent impairment rating of ten percent. Dr. Reeve authorized Worker to resume employment for "light duty" work for the remainder of Worker's life.

{3} From October 27, 2003, through March 8, 2005, Worker received all of the temporary total disability (TTD) benefits to which he was entitled. As of March 9, 2005, Worker was entitled to receive permanent partial disability (PPD) benefits for four hundred twenty-eight weeks and two days. Worker's total PPD rating as modified pursuant to NMSA 1978, §§ 52-1-26 to -26.4 (1987, as amended through 2003), is fifty-five percent. Accordingly, since March 9, 2005, Employer/Insurer has been paying Worker PPD benefits in the amount of $140 per week.

{4} Worker had not incurred any debts at the time the case went before the Workers' Compensation Administration (WCA) and the record does not reflect that Worker has incurred debts since then. However, Worker asserted that he could not find a new job due to his disability and that he could not support himself on the PPD benefits alone. Therefore, Worker sought to receive his PPD benefits in a lump sum so that he could invest the money to support himself.

{5} The case went before a Workers' Compensation Judge (WCJ) on June 7, 2006. After hearing arguments on Worker's request for a lump sum payment, the WCJ filed a memorandum opinion denying the request. The WCJ noted that the provisions regarding lump sum payments in New Mexico's workers' compensation laws had become increasingly restrictive over time. The WCJ stated that the current form of Section 52-5-12 "is clear and unambiguous," and that lump sums are only authorized when a worker has accumulated debts during a period of disability or when the worker has returned to work for six months and earns at least eighty percent of his or her pre-injury wage. *See* § 52-5-12(B), (C). The WCJ therefore concluded that Worker would not qualify for a lump sum payment under Section 52-5-12.

{6} With respect to Worker's claim that Section 52-5-12 violates equal protection, the WCJ stated that he could not decide the issue because "[a]dministrative law judges lack authority to determine the constitutionality of a statutory enactment[,]" citing *Sanchez v. Memorial General Hospital*, 110 N.M. 683, 688, 798 P.2d 1069, 1074 (Ct.App. 1990). The WCJ entered a final compensation order on July 21, 2006, and Worker's appeal from that order timely followed.

■ {7} Worker asserts on appeal that Section 52-5-12 violates equal protection because it treats workers who have not run up debts or returned to work differently than

workers who have. Moreover, Worker argues that we should apply the intermediate scrutiny standard of constitutional review because Worker belongs to a sensitive class of persons with physical impairment and permanent or partial disabilities. For the reasons set forth below, we conclude that the restrictions on lump sum payments set forth in Section 52–5–12 do not violate the Equal Protection Clauses of the United States and New Mexico Constitutions.

## DISCUSSION

■ {8} We inquire into the constitutionality of legislation using the de novo standard of review. *Pinnell v. Bd. of County Comm'rs*, 1999–NMCA–074, ¶ 17, 127 N.M. 452, 982 P.2d 503. We begin our inquiry with the presumption that the challenged legislation is constitutional. *Madrid v. St. Joseph Hosp.*, 1996–NMSC–064, ¶ 10, 122 N.M. 524, 928 P.2d 250. "We will not question the wisdom, policy, or justness of legislation enacted by our Legislature." *Id.*

{9} "We have interpreted the Equal Protection Clauses of the United States and New Mexico Constitutions as providing the same protections." *Valdez v. Wal–Mart Stores, Inc.*, 1998–NMCA–030, ¶ 6, 124 N.M. 655, 954 P.2d 87 (internal quotation marks and citation omitted). *But see Breen v. Carlsbad Mun. Schs.*, 2005–NMSC–028, ¶ 14, 138 N.M. 331, 120 P.3d 413 (stating that "[w]hile we take guidance from the Equal Protection Clause of the United States Constitution and the federal courts' interpretation of it, we will nonetheless interpret the New Mexico Constitution's Equal Protection Clause independently *when appropriate* " (emphasis added)). Worker has not asserted—nor has he provided us with a sufficient basis to conclude—that it is appropriate in the present case to interpret the New Mexico Constitution's Equal Protection Clause independently. We therefore apply the clauses' common "mandate that similarly situated individuals be treated alike, absent a sufficient reason to justify the disparate treatment." *Wagner v. AGW Consultants*, 2005–NMSC–016, ¶ 21, 137 N.M. 734, 114 P.3d 1050.

■ {10} In order to establish an equal protection violation, Worker must prove that

he is similarly situated to others but is treated dissimilarly. *Breen*, 2005–NMSC–028, ¶ 8, 138 N.M. 331, 120 P.3d 413. Put another way, Worker "must prove that [he] should be treated equally with another group but [is] not [so treated] because of a legislative classification." *Id.* If Worker can establish that, as a result of a legislative classification, he has suffered dissimilar treatment from those who are similarly situated, we then consider what level of scrutiny to apply to the challenged legislation. *Id.*

### A. It Is Unclear Whether Worker Is Subject to a Legislative Classification Under Section 52–5–12

■ {11} "The threshold question in analyzing all equal protection challenges is whether the legislation creates a class of similarly situated individuals who are treated dissimilarly." *Breen*, 2005–NMSC–028, ¶ 10, 138 N.M. 331, 120 P.3d 413. For example, in *Breen*, our Supreme Court concluded that NMSA 1978, § 52–1–41 (1999) and NMSA 1978, § 52–1–42 (1990) "create categories of similarly situated individuals, either totally impaired or partially impaired" and that "[w]ithin those similarly situated groups, persons with mental disabilities are treated differently than those with physical disabilities." *Breen*, 2005–NMSC–028, ¶ 10, 138 N.M. 331, 120 P.3d 413. More specifically, the Court noted that "[w]orkers who suffer total disability because of a physical injury can receive compensation for the rest of their lives, while workers who suffer total disability because of a primary mental impairment can only receive up to 100 weeks of compensation[.]" *Id.* (citation omitted). The Court noted similar disparities for workers suffering permanent partial disabilities due to physical injuries as opposed to primary mental impairment and concluded that the legislation "results in dissimilar treatment of similarly situated workers." *Id.*

{12} Worker asserts that he is similarly situated to other injured workers who have permanent or partial disabilities, yet some of those workers qualify for a lump sum payment under Section 52–5–12 while he does not. Section 52–5–12 provides, in relevant part:

A. It is stated policy for the administration of the Workers' Compensation Act [Chapter 52, Article 1 NMSA 1978] and the New Mexico Occupational Disease Disablement Law [52–3–1 NMSA 1978] that it is in the best interest of the injured worker or disabled employee that he receive benefit payments on a periodic basis. Except as provided in Subsections B, C and D of this section, lump-sum payments in exchange for the release of the employer from liability for future payments of compensation or medical benefits shall not be allowed.

B. With the approval of the workers' compensation judge, a worker may elect to receive compensation benefits to which he is entitled in a lump sum if he has returned to work for at least six months, earning at least eighty percent of the average weekly wage he earned at the time of injury or disablement. . . .

C. After [MMI] and with the approval of the workers' compensation judge, a worker may elect to receive a partial lump-sum payment of workers' compensation benefits for the sole purpose of paying debts that may have accumulated during the course of the injured or disabled worker's disability.

Thus, Worker appears to claim that Section 52–5–12 creates classes of (1) workers who return to work for six months while earning eighty percent of their pre-injury wage, (2) workers who incurred debts during the period of their disability, and (3) workers, such as Worker, who meet neither of the previous two conditions.

{13} Although we hesitate to accept Worker's argument that Section 52–5–12 creates classes of workers subject to disparate treatment, we need not decide the case on that basis. *See Valdez*, 1998–NMCA–030, ¶ 12, 124 N.M. 655, 954 P.2d 87 (proceeding with rational basis analysis despite concluding that the statute at issue "[did] not create separate classes of workers subject to differential treatment"). Assuming, without deciding, that Section 52–5–12 creates a legislative classification, we now turn to the question of whether any disparate treatment resulting

from the classification is sufficiently justified such that it does not violate equal protection.

## B. Constitutional Standard of Review

{14} "There are three levels of equal protection review based on the New Mexico Constitution: rational basis, intermediate scrutiny and strict scrutiny." *Breen*, 2005–NMSC–028, ¶ 11, 138 N.M. 331, 120 P.3d 413. "The applicable standard of review in a specific case is governed by the nature and importance of the individual interests asserted and the relationship between the statutorily[ ]created classification and the importance of the governmental interest involved." *Mieras v. Dyncorp*, 1996–NMCA–095, ¶ 24, 122 N.M. 401, 925 P.2d 518. Furthermore, "[i]n analyzing which level of scrutiny should apply in an equal protection challenge, a court should look at all three levels to determine which is most appropriate based on the facts of the particular case." *Breen*, 2005–NMSC–028, ¶ 15, 138 N.M. 331, 120 P.3d 413. The parties in the present case agree that strict scrutiny does not apply. We therefore only consider whether intermediate scrutiny or rational basis applies.

{15} In order for intermediate scrutiny to apply, the challenged "[l]egislation must either (1) restrict the ability to exercise an important right or (2) treat the person . . . challenging the constitutionality of the legislation differently because they belong to a sensitive class." *Id.* ¶ 17, 138 N.M. 331, 120 P.3d 413. Worker concedes that Section 52–5–12 does not set forth rights that rise to the level of important rights in the constitutional sense. Instead, Worker asserts that intermediate scrutiny applies because he is a member of a sensitive class.

{16} Although there is no formulaic approach to determining whether a group constitutes a sensitive class within the meaning of our equal protection jurisprudence, our Supreme Court has identified several factors that have supported the application of intermediate scrutiny in the past: (1) a long history of societal discrimination against the group, (2) systematic denial of the group from the political process, and (3) discrimination against the group for reasons beyond its

members' control. *Breen*, 2005–NMSC–028, ¶¶ 19–21, 138 N.M. 331, 120 P.3d 413. Worker claims that he belongs to a sensitive class because, as a result of his physical impairment, he has been subject to "purposeful unequal treatment and he has been relegated to a position of political powerlessness in our society."

{17} Worker's argument fails because it does not address the classification he has identified as violating equal protection. The classification about which Worker complains is based on his status of being a disabled person *who is unemployed and free of debt*. Worker presents no argument that the class of persons fitting that description meets any of the factors outlined above. Having no basis to conclude that Worker belongs to a sensitive class with respect to the challenged legislation, we review the constitutionality of Section 52–5–12 using the rational basis test.

### C. The Requirements For a Lump Sum Payment Under Section 52–5–12 Are Rationally Related to a Legitimate State Interest

{18} "Under the rational basis test, the [legislative] classification must be rationally related to a legitimate state goal." *Valdez*, 1998–NMCA–030, ¶ 10, 124 N.M. 655, 954 P.2d 87. "[T]he burden of proof is on the party challenging the validity of the legislation to demonstrate that the challenged legislation is clearly arbitrary and unreasonable, not just that it is possibly so." *Mieras*, 1996–NMCA–095, ¶ 29, 122 N.M. 401, 925 P.2d 518 (internal quotation marks and citation omitted).

{19} We have previously stated that Section 52–5–12 "reflects a legislative intent to avoid lump-sum payments except in exceptional circumstances because of the risk that short-sighted payment of a lump sum will ultimately lead to placement of the worker on the public dole." *Carrasco v. Phelps Dodge/Chino Mines*, 119 N.M. 347, 349, 890 P.2d 408, 410 (Ct.App.1995); *see also Cabazos v. Calloway Constr.*, 118 N.M. 198, 201, 879 P.2d 1217, 1220 (Ct.App.1994) ("The chief reason not to grant a lump-sum benefit is that it creates a risk that the worker will need to rely on welfare during the time that

periodic disability payments would otherwise be available." (internal quotation marks and citation omitted)). We have also noted that the workers' compensation scheme in New Mexico is "not meant to allow a recovery comparable to that in the normal tort recovery." *Codling v. Aztec Well Servicing Co.*, 89 N.M. 213, 215, 549 P.2d 628, 630 (Ct.App. 1976). Thus, "[p]eriodic payments supply, in a measure, the loss of a regular pay check." *Id.*

{20} The exceptions set forth in Subsections B and C of Section 52–5–12 reflect the legislature's recognition of circumstances in which there is a lessened risk that the grant of a lump sum will result in the worker's reliance on welfare. As we noted in *Cabazos*, "[a] worker who qualifies for a lump sum under Subsection B is earning a wage close to what the worker was earning prior to the injury, so there is a markedly lower risk that the worker will need to rely on welfare." 118 N.M. at 201, 879 P.2d at 1220. Subsection C, which permits a partial lump sum payment for the purpose of paying debts incurred during a period of disability, "deals with the exceptional case when a lump-sum payment . . . may be necessary to avoid extreme hardship." *Id.*

{21} Worker has failed to show that (1) the legislature's purpose in enacting Section 52–5–12 was not legitimate, and (2) Section 52–5–12 is not rationally related to the achievement of that purpose. In fact, Worker's brief in chief focuses exclusively on his argument under the intermediate scrutiny standard; Worker makes no argument regarding whether Section 52–5–12 fails under rational basis scrutiny. Nevertheless, Worker acknowledges the state's interest in protecting him from becoming dependent on welfare, yet argues that application of Section 52–5–12 to him accomplishes the opposite result. More specifically, Worker claims that his weekly payments are insufficient for him to afford utilities, city services, or food. Additionally, because Worker has been unable to find a new job, he cannot provide for himself or his family and may ultimately become dependent on welfare.

{22} We are not unsympathetic to Worker's circumstances. Although the record

fails to reveal with any specificity why Worker has been unable to find a new job, the fact that he remains unemployed and receives only $140 a week in disability benefits means that he is likely to turn to welfare, assuming he has not already done so.

{23} Still, the question before us is whether Section 52–5–12 is rationally related to a legitimate state interest, not whether the statute unfairly fails to account for the circumstances Worker currently faces. *See Sanchez v. M.M. Sundt Constr. Co.,* 103 N.M. 294, 297, 706 P.2d 158, 161 (Ct.App. 1985) (holding that the exclusive remedy provision of the Workers' Compensation Act "is not unreasonable nor arbitrary merely because the legislature failed to make provision for every possible contingency" (internal quotation marks and citation omitted)). "If the classification has some reasonable basis, it does not offend the Constitution simply because the classification is not made with mathematical nicety or because in practice it results in some inequality." *Id.* (internal quotation marks and citation omitted). In light of the foregoing, we conclude that Section 52–5–12 is rationally related to a legitimate state interest.

## CONCLUSION

{24} The WCJ's compensation order denying Worker a lump sum payment under Section 52–5–12 is affirmed.

{25} **IT IS SO ORDERED.**

WE CONCUR: JONATHAN B. SUTIN, Chief Judge and IRA ROBINSON, Judge.