This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-36758**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**KENNETH J. PIERRE,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Drew Douglas Tatum, District Judge**

Hector H. Balderas, Attorney General
Benjamin Lammons, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
John Bennett, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**ATTREP, Judge.**

**{1}** Defendant Kenneth Jesse Pierre appeals his conviction for reckless child abuse resulting in great bodily harm, contrary to NMSA 1978, Section 30-6-1(D) (2009), arguing that (1) he received ineffective assistance of counsel, (2) his conviction was based on insufficient evidence, and (3) the child abuse jury instruction deprived him of equal protection. We affirm.

## BACKGROUND

**{2}**      Defendant resided with Ashley, with whom he was in an intimate relationship; the couple's young daughter; and J.A., Ashley's seven-month-old son. After learning Ashley had spoken with J.A.'s father, Defendant became angry and took Ashley's phone, and the couple started arguing. Ashley picked up J.A. and went inside the house to a bedroom, where Defendant began trying to hit her with his hand. In the bedroom, J.A., who was upright in Ashley's arms, was "okay." Ashley started to leave the bedroom with J.A. to get away. Defendant inflicted a blow aimed at Ashley; whether his hand struck J.A. or Ashley was unclear to her. She could not tell if Defendant hit her directly or if he hit J.A., whose head then hit her chin. After the blow, as Ashley was trying to get away, Defendant grabbed her by the shirt, and she tripped and fell onto her back on the couch. Ashley managed to keep J.A. upright during the fall. Defendant then grabbed J.A. forcefully. Ashley let go of J.A. and ran outside to call for help from a neighbor's phone.

**{3}**      While Ashley was at the neighbor's, Defendant came out of the house holding J.A. and stated that J.A. would not wake up. Defendant gave J.A., who was not breathing, to Ashley and left. An ambulance arrived shortly thereafter. J.A. was taken to a local hospital, where he underwent a CT scan of the head that revealed life-threatening bleeding in the brain. J.A. was then transferred to a different hospital in Lubbock, Texas for subsequent treatment, and he eventually recovered from the injury.

**{4}**      A jury found Defendant guilty of battery on a household member, against Ashley, and reckless child abuse resulting in great bodily harm, against J.A. The jury acquitted him of possession of marijuana, a charge that arose from the police investigation of the incident. Defendant appeals only his child abuse conviction. We discuss as needed additional facts relevant to our resolution of the issues.

## DISCUSSION

### I.      Ineffective Assistance of Counsel

**{5}**      Defendant contends he was denied effective assistance of counsel through his trial counsel's failure to (1) pursue certain defense theories and (2) object to the State's opening statement. He seeks remand to the district court for an evidentiary hearing. We review this issue de novo. *See State v. Montoya*, 2015-NMSC-010, ¶ 57, 345 P.3d 1056.

**{6}**      To make out a successful ineffective assistance of counsel claim, a criminal defendant "must first demonstrate error on the part of counsel, and then show that the error resulted in prejudice." *State v. Bernal*, 2006-NMSC-050, ¶ 32, 140 N.M. 644, 146 P.3d 289. "An error only occurs if [counsel's] representation falls below an objective standard of reasonableness[,]" and cannot "be justified as a trial tactic or strategy[.]" *Id.* (alteration, internal quotation marks, and citation omitted). A defendant establishes prejudice "if, as a result of the deficient performance, there was a reasonable probability that the result of the trial would have been different." *State v. Dylan J.*, 2009-NMCA-027,

¶ 38, 145 N.M. 719, 204 P.3d 44 (alteration, internal quotation marks, and citation omitted).

**{7}** Evidence establishing ineffective assistance ordinarily is not found in the trial record. *State v. Crocco*, 2014-NMSC-016, ¶ 13, 327 P.3d 1068. Therefore, an ineffective-assistance claim "should normally be addressed in a post-conviction habeas corpus proceeding, which may call for a new evidentiary hearing to develop facts beyond the record, rather than on direct appeal of a conviction[.]" *Id.* (citation omitted). When the claim is nevertheless made on direct appeal, as here, we may remand the case for an evidentiary hearing if the defendant makes a prima facie case of ineffective assistance. *Id.* But "[w]ithout an adequate record, an appellate court cannot determine that trial counsel provided constitutionally ineffective assistance[,]" and remand is not warranted. *Id.* ¶ 15.

## A.      The Defense's Theory

**{8}** Defendant's first ineffective-assistance claim is premised on his view that "he is most unlikely to have caused the great bodily harm observed in [J.A.]" Defendant faults his counsel for not exploring certain "viable" defense theories before trial that presumably would have supported this view. In support of this claim, Defendant relies primarily on the trial testimony of one of the State's expert witnesses, Stephen Carroll, a radiologist physician who reviewed J.A.'s CT scan. Dr. Carroll testified that "absent an injury," it is "possible, but less likely" that a person would experience bleeding in the brain. He continued,

> You can say that it is likely that [an event causing bleeding in the brain] occurred within a range of time, but not at an exact moment . . . . Based on the appearance of the blood and its density, it's more likely that in this case [the injury-causing event] happened between twelve hours and two days. After two days, that density starts to fade, and I didn't see any fading in this case.

From this, Defendant contends that his counsel "evidently did not investigate" the possibilities that J.A.'s brain bleeding was caused (1) by something other than an infliction of force, or (2) by force inflicted before the altercation. He adds that "[c]ounsel would have discovered both of these [alternative theories] . . . had he either properly interviewed Dr. Carroll . . . or consulted another such expert."

**{9}** Despite making these claims, Defendant cites no evidence that his trial counsel in fact failed to explore the alternative theories. Our review of the record reveals no such evidence. To the contrary, it reveals that the defense, to at least some extent, did investigate the cause of J.A.'s injury. At a hearing on a motion to review Defendant's conditions of release, defense counsel indicated that interviews with the State's witnesses were being arranged, and that the defense both had received some medical reports and would be seeking more. Later, in a motion to continue, Defendant stated that "the investigator has completed all the interviews," and "additional information has

come up that [the investigator] needs to investigate as a result[.]" Such a record leaves open the possibility that Defendant's counsel did indeed "properly" interview Dr. Carroll and consult another expert—and concluded, after having done so, that the alternative theories Defendant now identifies on appeal had little merit compared with the theory ultimately advanced by the defense. *See State v. Baca*, 1993-NMCA-051, ¶¶ 29-30, 115 N.M. 536, 854 P.2d 363 (declining to presume that counsel failed to look into potentially exculpatory evidence); *see also State v. Crain*, 1997-NMCA-101, ¶ 26, 124 N.M. 84, 946 P.2d 1095 (recognizing no ineffective assistance in counsel's decision to advance one theory in favor of another, mutually exclusive theory). In other words, Defendant's argument unsoundly presumes that Dr. Carroll or some other expert would have substantiated one or both of these alternative theories to such a degree that defense counsel's ultimate choice of defenses would "appear[] wholly unreasoned[.]"[1] *Baca*, 1993-NMCA-051, ¶ 34; *see also Crain*, 1997-NMCA-101, ¶ 33 (recognizing no ineffective assistance where the record did not indicate that a defense expert was available to testify and did not reveal the nature of the expert's testimony).

**{10}** To bolster his claim, Defendant attempts to analogize it to *State v. Aragon*, 2009-NMCA-102, 147 N.M. 26, 216 P.3d 276, another case in which the defendant raised an ineffective assistance challenge to a child abuse conviction. In *Aragon*, this Court remanded for an evidentiary hearing, having held that the defendant established a prima facie case of ineffective assistance because of defense counsel's failures both to interview the state's expert witnesses and to consult an expert. *Id.* ¶ 1. But in *Aragon*, unlike here, there was "no dispute that defense counsel failed to conduct [the] pre[]trial interviews[,]" *id.* ¶ 9, and it was "apparent[]" that no expert was consulted, *id.* ¶ 12.

**{11}** This Court later distinguished *Aragon* and declined to remand for an evidentiary hearing in *State v. Quiñones*, 2011-NMCA-018, 149 N.M. 294, 248 P.3d 336, a case more analogous to this one. The defendant in *Quiñones* likewise complained that his trial counsel failed to consult with or engage an expert who could undermine the state's theory. *Id.* ¶ 32. *Quiñones* observed, though, that the record shed no light on counsel's efforts in that regard, *id.* ¶¶ 32-35, and this Court declined to speculate on the matter. *Id.* ¶ 33 ("On this record, we will not speculate as to what happened behind the scenes with respect to defense counsel's decisions regarding potential defense experts."). This Court further noted that, in contrast to *Aragon*, there was no evidence in the record that the potentially exonerating theory propounded on appeal had support within the medical

---

1Defendant also faults his counsel for not pointing out to the jury what he characterizes as the discrepancy between the State's theory of what caused J.A.'s brain bleeding and Dr. Carroll's suggestion that the injury-causing event occurred between twelve and forty-eight hours before the scan. This argument suffers from a failing along the lines of that previously discussed: it is not apparent from the record that defense counsel's choice of theories was wholly unreasoned. And in light of one of the defense theories advanced—i.e., that the injury did occur during the altercation, but the exact cause of the injury was unknown—it would have been inconsistent to also argue that the injury occurred twelve or more hours beforehand. *See Baca*, 1993-NMCA-051, ¶ 36 (validating the defense counsel's election to not pursue a duress defense, in light of the self-defense theory actually pursued, given the inconsistency that would have resulted). Under this circumstance, Defendant's counsel was entitled to refrain from pointing out the discrepancy, in an effort to "maintain credibility before the jury." *Id.*

community.[2] *Quiñones*, 2011-NMCA-018, ¶ 35. This case shares these characteristics of *Quiñones* and makes the comparison to *Aragon* inapt.

**{12}** As in *Quiñones*, we conclude that Defendant "has not demonstrated a prima facie case of ineffectiveness." 2011-NMCA-018, ¶ 36. "[T]he evidence before us is not sufficient to allow us to determine whether defense counsel's performance was deficient, and if so, whether Defendant was prejudiced as a result." *Id.* ¶ 33; *see also Dylan J.*, 2009-NMCA-027, ¶ 40 ("We are reluctant to attempt to decide the issue [of ineffective assistance] when we do not have before us all of the facts needed for an informed decision."). Our conclusion does not, however, preclude Defendant from pursuing this issue in a habeas corpus or other post-conviction proceeding. *See Quiñones*, 2011-NMCA-018, ¶ 36.

## B.    The State's Opening Statement

**{13}** Defendant further argues that he received ineffective assistance because his counsel did not object to a portion of the State's opening statement, which Defendant characterizes as "highly improper" and "unquestionably objectionable." Defendant cites the following relevant parts of the State's opening:

> Many of you may recall that in 2008, there was a tornado that hit here in Clovis. It hit near the middle of town, and also caused great harm near the overpass. That was a very scary moment for our community. For if there's anything we all understand about tornadoes, it's that they have one purpose. And that purpose is to destroy anything and everything in their path. A tornado doesn't care.

> And sometimes as humans, the blame greatly can build towards their partner, can cause them to turn into a tornado. For the only purpose at that time is to destroy anyone and anything in their path, whether that be their significant other, or even a child.

> . . . .

> It's been over a year, and Ashley, [J.A.], and his lovely big sister . . . are still trying to rebuild their lives. They're still trying to get over the storm that took place, after this tornado came in and tried to destroy their lives. And this week, the State hopes to bring the calm after the storm.

---

2Both parties cite information from the medical community taken from the internet to support the strength of their opposing views on the likely cause of J.A.'s injury—and, by extension, the strength of defense counsel's performance. This information, however, is not found in the record. As noted, in reviewing an ineffective-assistance claim, "we evaluate the facts that are part of the record[,]" *Crocco*, 2014-NMSC-016, ¶ 14 (internal quotation marks and citation omitted), not facts that are introduced for the first time on appeal. *See also, e.g.*, *State v. Knight*, 2019-NMCA-060, ¶ 22, 450 P.3d 462 ("[O]ur scope of appellate review is limited to a consideration of those facts disclosed by the record." (internal quotation marks and citation omitted)). We therefore disregard this information.

In the defense's opening statement, counsel responded by denying that Defendant was a "tornado." Defense counsel raised the subject again during closing, arguing "[Defendant] is not a tornado, [he] is a human being," and pointing out that Defendant was crying during much of the trial out of regret for what happened.

{14}    Defendant's argument on this matter is scant. We understand him to take issue with the statements in the last-quoted paragraph concerning Ashley and the children's predicament following the incident. That is, he argues that the prosecution is generally barred from divulging a victim's emotional state or circumstances to the court or jury. Even if this premise is true, it is unclear how defense counsel's lack of objection to the statements amounted to deficient performance resulting in prejudice, particularly considering that "[f]ailure to object to every instance of objectionable evidence or argument does not render counsel ineffective; rather, failure to object falls within the ambit of trial tactics" that we do not second-guess. *State v. Allen*, 2000-NMSC-002, ¶ 115, 128 N.M. 482, 994 P.2d 728 (alteration, internal quotation marks, and citation omitted). Nor does Defendant explain how his counsel's silence was objectively unreasonable or was so serious that it would undermine our confidence in the accuracy and reliability of his child abuse conviction.

{15}    Rather, Defendant relies entirely on *State v. Dartez*, 1998-NMCA-009, 124 N.M. 455, 952 P.2d 450. But *Dartez* is "not a case where there was one isolated reference made in passing" to the matter claimed as off limits. *Id.* ¶ 30. Rather, it is a case in which testimony was elicited in "extensive detail" on the "highly prejudicial" subject of the defendant's past involvement with illegal drug sales, a subject also raised in the state's opening and closing. *Id.* ¶¶ 28, 30-31. Defense counsel's subsequent silence in *Dartez* was plainly more unreasonable than in this case—where the statement at issue, an "isolated reference made in passing," *id.* ¶ 30, surfaced not during the presentation of evidence or even closing, but only in the State's opening statement. Given the general lack of congruency between *Dartez* and this case, and the lack of development in what remains of Defendant's argument, we decline to consider the issue further. *See State v. Candelaria*, 2019-NMSC-004, ¶ 46, 434 P.3d 297 (declining to consider allegations of ineffective assistance where they were inadequately briefed). Again, however, our conclusion does not preclude Defendant from pursuing this issue in a habeas corpus or other post-conviction proceeding. *See Quiñones*, 2011-NMCA-018, ¶ 36.

## II.    Sufficiency of the Evidence

{16}    Defendant next argues that there was insufficient evidence to prove that he committed child abuse, as defined by the applicable jury instruction. When reviewing the sufficiency of the evidence, we apply a substantial evidence standard. *State v. Chavez*, 2009-NMSC-035, ¶ 11, 146 N.M. 434, 211 P.3d 891. "The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (alteration, internal quotation marks, and citation omitted). "In performing this review, we must view the evidence in the light most favorable to the guilty verdict,

indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *Id.* (internal quotation marks and citation omitted). "A reasonable inference is a conclusion arrived at by a process of reasoning which is a rational and logical deduction from facts admitted or established by the evidence[,]" and "is more than a supposition or conjecture." *State v. Slade*, 2014-NMCA-088, ¶ 14, 331 P.3d 930 (alteration, internal quotation marks, and citations omitted).

**{17}** The jury instruction defining child abuse in this case read:

> For you to find [D]efendant guilty of [c]hild [a]buse [r]esulting in [g]reat [b]odily [h]arm, . . . the State must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1.    [Defendant] battered Ashley . . . while she was holding seven month old [J.A.], striking him in the process and then pursued Ashley . . . down a hallway causing her to fall over a couch while holding [J.A.];
>
> 2.    By engaging in the conduct described in Paragraph 1, [Defendant] caused [J.A.] to be placed in a situation that endangered the life or health of [J.A.];
>
> 3.    [Defendant] showed a reckless disregard for the safety or health of [J.A.] To find that [Defendant] showed a reckless disregard, you must find that [Defendant's] conduct was more than merely negligent or careless. Rather, you must find that [Defendant] caused a substantial and unjustifiable risk of serious harm to the safety or health of [J.A.] A substantial and unjustifiable risk is one that any law abiding person would recognize under similar circumstances and that would cause any law abiding person to behave differently than [Defendant] out of concern for the safety or health of [J.A.];
>
> 4.    [Defendant's] conduct resulted in great bodily harm to [J.A.];
>
> 5.    [J.A.] was under the age of eighteen (18);
>
> 6.    This happened in New Mexico on or about the 20th day of February, 2016.

*See* UJI 14-615 NMRA.

**{18}** Defendant only challenges a portion of the first element, arguing that "guess work" was needed for the jury to find that Defendant struck J.A.[3] The State maintains

---

[3]Defendant contends that (1) "although the indictment here [did] not require proof that [Defendant] struck [J.A.], jury instructions 'become the law of the case against which the sufficiency of the evidence is to be

that the jury heard evidence from which it could reasonably infer that Defendant struck J.A. We agree with the State. Although Ashley was not certain whether Defendant struck J.A. when he swung at her, substantial evidence supports the inference that he did. *See State v. Flores*, 2010-NMSC-002, ¶ 17, 147 N.M. 542, 226 P.3d 641 (observing that evidence of an act may be sufficient absent eyewitness testimony), *overruled on other grounds by State v. Martinez*, 2021-NMSC-002, ¶ 87, 478 P.3d 880. In particular, J.A.'s head was close to Ashley's at the moment she was hit, and, after the incident, J.A. had fresh cuts behind his right ear, and Ashley was bruised on the left side of her chin. In addition, the jury received evidence that J.A. was fine just before the altercation and that, afterwards, his condition deteriorated drastically. The jury watched a video of J.A., who showed no sign of injury, pushing himself in a walker, interacting with his sister, and otherwise appearing healthy. According to Ashley, the video accurately depicted how J.A. looked before the day of the incident. Ashley also testified that J.A. was "okay" when they were first in the bedroom. Soon after Defendant swung at Ashley, as she held J.A., J.A. lost consciousness and was later diagnosed with bleeding in the brain.

**{19}** Additionally, medical evidence supports a finding by the jury that J.A.'s brain injury was caused by blunt force trauma, such as Defendant striking J.A. Dr. Carroll testified that blunt force trauma was the most common cause of injuries like J.A.'s in children his age. Both Dr. Carroll and the State's other expert, an emergency room physician who examined J.A., testified that, had a man hit someone holding a child, striking the child with his hand, an injury like J.A.'s could result. The emergency room physician further opined that J.A.'s injury was caused not by disease or a natural occurrence, but by trauma.

**{20}** In short, J.A.'s drastic deterioration closely following Defendant's swinging at Ashley, coupled with Ashley's testimony about what transpired and the nature of J.A.'s injuries, support a reasonable inference that Defendant struck J.A. *See State v. Rojo*, 1999-NMSC-001, ¶ 23, 126 N.M. 438, 971 P.2d 829 ("Just because the evidence supporting the conviction was circumstantial does not mean it was not substantial evidence." (internal quotation marks and citation omitted)). *See generally State v. Garcia*, 2016-NMSC-034, ¶¶ 23-26, 384 P.3d 1076 (rejecting the proposition that an appellate court may upset a jury's verdict by finding that the evidence is consistent with a hypothesis of innocence). Given Defendant challenges only this aspect of the evidence supporting his child abuse conviction, our review of this issue is complete. *See*

---

measured[,]' *State v. Smith*, 1986-NMCA-089, ¶ 7, 104 N.M. 729[, 726 P.2d 883]"; and (2) therefore, the act of striking J.A., because it was articulated in the instructions, had to be proved. This premise is somewhat flawed; the "law of the case" principle gives way when a jury instruction includes an additional element not representing a statutory element of the charged crime. *See State v. Carpenter*, 2016-NMCA-058, ¶ 15, 374 P.3d 744. In that circumstance, the sufficiency of the evidence should not be assessed against such an additional element. *See id.* ¶¶ 14-15; *see also State v. Sweat*, 2017-NMCA-069, ¶¶ 31-33, 404 P.3d 20 (rejecting the claim that the state was required to present evidence of factual elements in a jury instruction, where those elements were absent in the statute defining the crime). Because we conclude that there was sufficient evidence to support a finding that Defendant struck J.A., we need not contend with Defendant's seeming concession that this element was superfluous and his assertion that the State nonetheless was required to prove it.

Rule 12-318(A)(4) NMRA ("A contention that a verdict, judgment, or finding of fact is not supported by substantial evidence shall be deemed waived unless the argument identifies with particularity the fact or facts that are not supported by substantial evidence[.]").

### III.     The Child Abuse Jury Instruction

**{21}**    Defendant lastly questions the constitutionality of the jury instruction used to convict him of reckless child abuse, which tracked UJI 14-615. He claims that the absence of language conditioning guilt on a finding that he was "wholly indifferent to the consequences of his conduct and to the welfare and safety of [J.A.]" violated his equal protection rights.

**{22}**    UJI 14-615 resulted from our Supreme Court's deliberation on the wording of its predecessor, UJI 14-602 NMRA (withdrawn Apr. 3, 2015), namely, UJI 14-602's definition of "reckless disregard." *See State v. Consaul*, 2014-NMSC-030, ¶¶ 34-35, 332 P.3d 850; UJI 14-615 comm. cmt.; UJI 14-612 NMRA comm. cmt. The former version of the jury instruction included such a "wholly indifferent" provision. *Consaul*, 2014-NMSC-030, ¶ 34. It read:

> The defendant acted [intentionally] [or] [with reckless disregard] [and without justification]. [To find that _____ *(name of defendant)* acted with reckless disregard, you must find that _____ *(name of defendant)* knew or should have known the defendant's conduct created a substantial and foreseeable risk, the defendant disregarded that risk and the defendant was wholly indifferent to the consequences of the conduct and to the welfare and safety of _____ *(name of child)*[.]

UJI 14-602 (footnotes omitted).

**{23}**    UJI 14-615, which represents our Supreme Court's most recent expression of the appropriate standard for a conviction of reckless child abuse, *see State v. Sundeen*, 2001-NMSC-006, ¶ 1, 130 N.M. 83, 17 P.3d 1019 ("[Our] Supreme Court's decision to amend the instruction . . . reflect[s] its belief that the new instruction more accurately reflects the Legislature's intention in enacting the statute."), leaves out the "wholly indifferent" provision and supplants it with the following:

> _____ *(name of defendant)* showed a reckless disregard [without justification] for the safety or health of _____ *(name of child)*. To find that _____ *(name of defendant)* showed a reckless disregard, you must find that _____ *(name of defendant)*'s conduct was more than merely negligent or careless. Rather, you must find that _____ *(name of defendant)* [caused] [or] [permitted] a substantial and unjustifiable risk of serious harm to the safety or health of _____ *(name of child)*. A substantial and unjustifiable risk is one that any law-

abiding person would recognize under similar circumstances and that would cause any law-abiding person to behave differently than _____ (*name of defendant*) out of concern for the safety or health of _____ (*name of child*)[.]

UJI 14-615 (footnotes omitted).

**{24}** We understand Defendant to argue that the inclusion of the "wholly indifferent" provision in the jury instruction used to convict him of reckless child abuse was requisite to equal protection; and, so, the provision's absence in the instruction constituted fundamental error. In particular, Defendant reasons that unequal treatment arises between those accused of reckless child abuse and those accused of negligent arson (a crime defined in part as "recklessly starting a fire[,]" NMSA 1978, § 30-17-5(G) (2006)), in that the uniform jury instruction defining "recklessly" for negligent arson, UJI 14-1704 NMRA, includes a "wholly indifferent" provision virtually identical to that of the former reckless child abuse instruction in UJI 14-602. *Compare* UJI 14-1704, *with* UJI 14-602. Defendant appears to view the "wholly indifferent" provision as elevating the standard for conviction and appears to argue that there is no rational basis for what he considers the disparate treatment of the two classes of accused persons arising from the selective application of the provision.

**{25}** Defendant did not preserve this issue by objecting to the child abuse jury instruction given. We are therefore limited to reviewing for fundamental error. *See State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134. "In a review for fundamental error, we first determine whether an error occurred. If an error occurred, we determine whether the error was fundamental[.]" *State v. Marquez*, 2016-NMSC-025, ¶ 46, 376 P.3d 815 (citation omitted). Because Defendant does not persuade us that the use of the jury instruction violated his right to equal protection, we do not consider his claim that the instruction amounted to fundamental error. *See id.*

**{26}** We review Defendant's equal protection challenge de novo. *See Rodriguez v. Brand W. Dairy*, 2016-NMSC-029, ¶ 10, 378 P.3d 13. To make out a successful equal protection claim, Defendant must demonstrate that the object of his challenge (in this case, the portion of the child abuse jury instruction defining reckless disregard) is unconstitutional beyond all reasonable doubt. *See id.* To arrive at that conclusion, Defendant would first have to prove that he is "similarly situated" to another group with which he should be treated equally, but is not so treated because of a (in this case) judicial classification.[4] *See Rodriguez v. Scotts Landscaping*, 2008-NMCA-046, ¶ 10, 143 N.M. 726, 181 P.3d 718. Only then would we move on to the next two steps: determining the appropriate level of scrutiny to apply and deciding whether the object of the challenge survives that scrutiny. *See Rodriguez*, 2016-NMSC-029, ¶ 9.

---

4The equal protection case law cited by Defendant references legislative, not judicial, classifications; and Defendant cites no authority for the proposition that a jury instruction can serve as the basis of an equal protection claim. We nevertheless assume for the purposes of our analysis that it can.

**{27}** Defendant, as an individual defending against a charge of reckless child abuse, has not established that he is similarly situated to those defending against charges of negligent arson. Defendant cites four cases in relation to his contention that he is, but none are availing. One of the cases cited, *Rodriguez*, is factually distinct, in that it held that farm and ranch laborers, whom the law denied workers' compensation benefits, were in a class with other agricultural workers entitled to those benefits. *Id.* ¶¶ 1, 17. Our Supreme Court made that determination after thoroughly examining the applicable act, its history, and the legislative purposes behind that act. *See id.* ¶¶ 11-17. Defendant here does not even attempt to analogize this case to *Rodriguez*—and we fail to see how such a factually and legally distinct case supports his "similarly situated" contention. Moreover, Defendant fails entirely to offer the type of examination of the applicable statutes and jury instructions, and their histories and purposes, that was integral to the "similarly situated" analysis in *Rodriguez. See id.* ¶ 11 ("[D]ecid[ing] whether the legislation at issue results in dissimilar treatment of similarly-situated individuals . . . requires us to look beyond the classification to the purpose of the law." (internal quotation marks and citations omitted)). Two other cases cited by Defendant, *State v. Gwynne*, 2018-NMCA-033, 417 P.3d 1157, and *Ruelas v. Superior Court*, 185 Cal. Rptr. 3d 343 (Ct. App. 2015), are not cases in which two classes of persons were deemed similarly situated. Defendant cites them—and the last case, *Nordlinger v. Hahn*, 505 U.S. 1 (1992)—only for basic propositions of law that he thereafter does not incorporate into any analysis.

**{28}** Overall, Defendant's "similarly situated" argument fails for lack of development; we therefore give Defendant's equal protection claim no further consideration. *See Gwynne*, 2018-NMCA-033, ¶ 44 (declining to consider the remainder of an equal protection challenge where the defendant's "similarly situated" argument was inadequately developed). Because Defendant has failed to establish an equal protection violation and has offered no other basis beyond his equal protection claim for concluding that the child abuse jury instruction resulted in error, our inquiry is at an end. *See Marquez*, 2016-NMSC-025, ¶ 46.

**CONCLUSION**

**{29}** Having concluded that Defendant's arguments lack merit, we affirm.

**{30} IT IS SO ORDERED.**

**JENNIFER L. ATTREP, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**ZACHARY A. IVES, Judge**