The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: January 24, 2022

**No. A-1-CA-38052**

**ANA LILIA CARDENAS,**

Worker-Appellant,

v.

**AZTEC MUNICIPAL SCHOOLS
and CCMSI,**

Employer/Insurer-Appellees.

**APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION
Reginald C. Woodard, Hearing Officer**

Titus & Murphy Law Firm
Victor A. Titus
Farmington, NM

for Appellant

Allen, Shepherd, Lewis & Syra, P.A.
Joshua A. Collins
Katrina Bagley Brown
Albuquerque, NM

for Appellees

# OPINION

**YOHALEM, Judge.**

{1}     This is an appeal by Ana Lilia Cardenas (Worker) from the order of a Workers' Compensation Judge (WCJ) limiting the duration of her disability benefits for a secondary mental impairment to 150 weeks, the period fixed by the Workers' Compensation Act (the Act) for compensation for the primary scheduled physical injury to her knee. Worker argues that the limit imposed by NMSA 1978, Section 52-1-41(C) (2015), on the duration of total disability benefits, and NMSA 1978, Section 52-1-42(A)(4) (2015) on the duration of partial disability benefits, for a secondary mental impairment,[1] limits not imposed on disability benefits for workers with a secondary physical impairment,[2] violate the Equal Protection Clause of both the New Mexico and the United States Constitutions. In this case, Worker would be

---

[1]A " 'secondary mental impairment' means a mental illness resulting from a physical impairment caused by an accidental injury arising out of and in the course of employment." NMSA 1978, § 52-1-24(C) (1990).

[2]We refer to physical disabilities, which like secondary mental disabilities, are "caused by an accidental injury arising out of and in the course of employment[,]" *id.*, as "secondary physical impairments." Although not labeling them as "secondary" impairments, *see* § 52-1-24(A), the Act nonetheless recognizes and compensates physical impairments that result from and are caused by a compensable work-related accidental injury. *See Baca v. Complete Drywall Co.*, 2002-NMCA-002, ¶ 16, 131 N.M. 413, 38 P.3d 181 (distinguishing between a work-related sudden accidental injury and a subsequent injury to another body part that is compensable if "the resulting disability is causally connected [or secondary] to the original accidental injury").

entitled to a maximum of 500 weeks of permanent partial disability compensation, under Section 52-1-42(A)(2), if her secondary impairment had been a physical impairment. Instead, she was awarded 150 weeks of compensation solely because her secondary impairment was a mental impairment.

{2} We agree with Worker that the Act discriminates between secondary mental impairments and secondary physical impairments, in violation of the Equal Protection Clause of the New Mexico Constitution. N.M. Const. art. II, § 18. Because this decision affords Worker the relief she seeks, we do not reach Worker's claim of discrimination between the Act's treatment of primary and secondary mental impairments, nor do we address Worker's claim under the United States Constitution.

## BACKGROUND

{3} The facts in this case are undisputed. Worker, a special education teacher, sustained a knee injury in a January 2016 workplace accident. Worker later filed a workers' compensation claim for both her primary knee injury and for a secondary mental impairment she alleged resulted from and was caused by the original injury to her knee. An independent psychological evaluation was conducted. The evaluating psychologist concluded, to a reasonable psychological probability, that Worker's psychological impairment was "causally related" to the workplace injury

2

to Worker's knee and that Worker was 15 percent disabled by her psychological impairment.

{4}     Employer Aztec Municipal Schools does not dispute that Worker's knee injury was caused by a work-related accident or that Worker's secondary mental impairment was caused by her work-related physical injury. The parties also agree that a knee injury, a scheduled injury listed in NMSA 1978, Section 52-1-43(A)(30) (2003), has a statutory compensation period of 150 weeks.

{5}     The dispute between the parties concerns the length of time Worker will receive compensation benefits for her secondary mental impairment. Pursuant to Section 52-1-42(A)(4), the duration of partial disability benefits for a secondary mental impairment is limited to the number of weeks allowable for the worker's original physical injury. When the original physical injury is to a scheduled body part, the worker is limited to the duration of benefits listed in Section 52-1-43 for an injury to that body part. The number of weeks a worker will be paid for a scheduled injury ranges from 7 to 200 weeks, depending solely on the body part originally injured.[3] In contrast, where the secondary impairment is a physical impairment the

---

[3]For example, if the original injury is to a distal joint of a finger, the schedule provides 7 weeks of partial disability benefits for a secondary mental impairment resulting from and caused by that injury. Section 52-1-43(A)(27). A secondary mental impairment resulting from and caused by an arm injury near the shoulder would qualify for 200 weeks of partial disability benefits. Section 52-1-43(A)(1).

duration of partial disability benefits depends on the "nature and extent" of the secondary physical injury. Sections 52-1-41(C), -42(A).

{6} Worker contends that capping the duration of benefits for a secondary mental impairment resulting from a scheduled physical injury, when a secondary physical impairment resulting from a scheduled physical injury is not similarly capped, violates our Constitution's equal protection guarantee because it treats workers with secondary mental impairments differently than similarly situated workers with secondary physical impairments. Worker points out that if her secondary mental impairment was treated the same as an unscheduled secondary physical impairment, she would be entitled to up to 500 weeks of partial disability benefits, rather than the 150 weeks she was awarded.

**DISCUSSION**

{7} The equal protection clauses of both the United States and New Mexico Constitutions require the government to treat similarly situated persons the same, "absent a sufficient reason to justify the disparate treatment." *Wagner v. AGW Consultants*, 2005-NMSC-016, ¶ 21, 137 N.M. 734, 114 P.3d 1050. In *Breen v. Carlsbad Municipal Schools*, our Supreme Court held that earlier versions of the same sections of the Act that are challenged in this case, Section 52-1-41(B) (1999) and Section 52-1-42 (1990), violated the Equal Protection Clause of the New Mexico Constitution by treating workers with a mental impairment differently, and less

4

favorably, than similarly situated workers with a physical impairment. 2005-NMSC-028, ¶¶ 1, 50, 138 N.M. 331, 120 P.3d 413.

{8} Our Supreme Court in *Breen*, and later in *Rodriguez v. Brand West Dairy*, 2016-NMSC-029, 378 P.3d 13, defined three steps necessary to determine whether a worker's equal protection rights under our state Constitution's Equal Protection Clause are violated by the provisions of the Act. The worker "must first prove that they are similarly situated to another group but are treated dissimilarly" by a legislative classification. *Breen*, 2005-NMSC-028, ¶ 8. Second, if the worker proves that the two groups are similarly situated, and yet are treated differently by the Act, then this Court "must determine what level of scrutiny should be applied to the legislation they are challenging." *Id.* The level of scrutiny depends on the nature of the rights the legislation protects or the status of the group of people it affects. *Id.* The Court held in *Breen* that workers with mental impairments or mental disabilities are a "sensitive class" requiring intermediate scrutiny. *Id.* ¶ 28. Third, where intermediate scrutiny applies, the burden then shifts to the employer to show that the Act's different treatment of two equivalent groups is "substantially related to an important government interest." *Id.* ¶ 13 (internal quotation marks and citations omitted).

{9} Although *Breen* guides our analysis, we cannot assume, without engaging in a careful analysis of the challenged provisions of the Act, that these statutory

5

provisions violate equal protection. We apply a standard of review deferential to our Legislature when reviewing the constitutionality of legislation. *See Rodriguez v. Scotts Landscaping*, 2008-NMCA-046, ¶ 8, 143 N.M. 726, 181 P.3d 718. During that review, we will not "question the wisdom, policy, or justness of legislation enacted by our Legislature[,]" and will begin by presuming that the legislation is constitutional. *Madrid v. St. Joseph Hosp.*, 1996-NMSC-064, ¶ 10, 122 N.M. 524, 928 P.2d 250. "A statute will not be declared unconstitutional unless the court is satisfied beyond all reasonable doubt that the legislature went outside the constitution in enacting the challenged legislation." *Benavides v. E. N.M. Med. Ctr.*, 2014-NMSC-037, ¶ 43, 338 P.3d 1265 (internal quotation marks and citation omitted).

{10} Our careful review of the *Breen* factors follows.

## I. Workers With a Secondary Mental Impairment Are Treated Differently Than Similarly Situated Workers With a Secondary Physical Impairment

{11} As Employer and Worker both acknowledge, the "threshold question in analyzing all equal protection challenges is whether the legislation creates a class of similarly situated individuals who are treated dissimilarly." *Breen*, 2005-NMSC-028, ¶ 10. *Breen* held that workers with a primary mental impairment are similarly

situated to workers with a primary physical impairment.[4] *Id.* With that in mind, we begin our inquiry by examining Worker's claim that workers with "secondary mental impairments" are similarly situated to workers with physical impairments that are secondary to, and a "natural and direct result" of a work-related accidental injury. NMSA 1978, § 52-1-28(A) (1987). Concluding that these groups are similarly situated, we next address whether they are treated differently by the Act in Section 52-1-28(B).

**A.    Injured Workers With a Secondary Mental Impairment Are Similarly Situated to Injured Workers With a Secondary Physical Impairment With Respect to the Objectives of the Act**

{12}    In deciding whether individuals are similarly situated, our Supreme Court instructs us to "look beyond the classification to the purposes of the law." *Rodriguez*, 2016-NMSC-029, ¶ 11 (internal quotation marks and citation omitted). The Equal Protection Clause does not allow a statute to divide persons " 'into different classes on the basis of criteria wholly unrelated to the objective of that statute.' " *Id.* (quoting *Stanton v. Stanton*, 421 U.S. 7, 13-14 (1975)). Only classifications serving the purposes of the statute are permitted. *See id.*

---

[4]The *Breen* Court identified two classifications adopted by the Legislature: "totally impaired" and "partially impaired," and held that all partially impaired workers are similarly situated, regardless of whether their impairment was a primary physical or primary mental impairment, and that all totally impaired workers are similarly situated, regardless of whether their impairment is a primary physical or a primary mental impairment.

7

**{13}** We look first to the purposes of the statute. The Act's intention has been described as "to provide a humanitarian and economical system of compensation for injured work[ers]." *Breen*, 2005-NMSC-028, ¶ 36 (internal quotation marks and citation omitted). The main goal of the Act is "to compensate a worker for lost earning capacity." *Id.* ¶ 37.

**{14}** The Act imposes three criteria, which must be met to qualify for compensation: (1) "the worker has sustained an accidental injury arising out of and in the course of his [or her] employment"; (2) "the accident was reasonably incident to his [or her] employment"; and (3) "the disability is a natural and direct result of the accident." Section 52-1-28(A). Pursuant to this provision, the Act treats as compensable both "disability arising immediately from a work-related accident and [. . .] disability that develops later as a result of the normal activities of life." *Aragon v. State Corr. Dep't*, 1991-NMCA-109, ¶ 8, 113 N.M. 176, 824 P.2d 316. The worker need only show that the later-arising disability is causally connected to the original accidental injury. *See Baca*, 2002-NMCA-002, ¶ 16, 131 N.M. 413, 38 P.3d 181. As this Court has explained in construing Section 52-1-28, the Act's purpose is to provide compensation for "the disability caused by the accident—not the accident itself[.]" *Baca*, 2002-NMCA-002, ¶ 15. Secondary physical disabilities shown to be caused by the original accident are, therefore, compensable under the Act. *See id.*

8

{15}    "[S]econdary mental impairment" is defined by the Act as "a mental illness resulting from a physical impairment caused by an accidental injury arising out of and in the course of employment." Section 52-1-24(C). In other words, a secondary mental impairment is a mental illness caused by an accidental work-related injury. Section 52-1-24(A) includes secondary mental impairment as a compensable impairment under the Act. *See id.* ("Impairment includes physical impairment, primary mental impairment and secondary mental impairment[.]"). It is undisputed that Worker qualifies for disability benefits based on a "secondary mental impairment" resulting from the pain and disability caused by her work-related accidental injury to her knee.

{16}    We see no difference related to the purposes of the Act between workers with subsequently arising secondary physical disabilities that are causally connected to a compensable work-related accidental injury, and workers with "secondary mental impairments," as defined by the Act. The workers in both groups have become secondarily impaired as the result of an original work-related accidental injury and both groups have lost earnings as the result of their secondary disability. They are thus similarly situated with regard to the Act's purpose: to provide workers compensation for earning capacity lost or diminished due to a disability caused by and resulting from a work-related accidental injury. *See Breen*, 2005-NMSC-028, ¶ 37.

{17}     Employer contends on appeal that "differently injured workers are not similarly situated." This contention, however, is plainly at odds with our Supreme Court's decision in *Breen*, which held that workers with primary mental impairments and workers with primary physical impairments are similarly situated classifications for the statutory purposes of compensating workers for either a total or partial loss of earning capacity due to a work-related accidental injury. *Id.* ¶ 10. As our Supreme Court explained in *Breen*, differences in the type of injury or its cause fade in importance "once a worker has been determined to have suffered a compensable disability." *Id.* ¶ 37. There is no dispute in this case that Worker's secondary mental impairment is a compensable disability covered by the Act. *See* § 52-1-24(A), (C) (defining a secondary mental impairment as a compensable impairment).

{18}     We, therefore, conclude that workers with secondary mental impairments are similarly situated to workers with secondary physical impairments.

**B.     Workers With Secondary Mental Impairments Are Treated Differently Than Workers With Secondary Physical Impairments**

{19}     Having determined that workers with secondary mental impairments are similarly situated to workers with secondary physical impairments, we now determine whether the Act treats these two classifications of workers differently.

{20}     The provisions of the Act challenged by Worker, Sections 52-1-41(C), -42(A)(4), limit the period of compensation for a secondary mental

10

impairment to the "maximum period allowable for the disability produced by the [original] physical impairment."[5] Where the original physical impairment arises from an injury to a body part listed in Section 52-1-43 (a scheduled injury), this means that the duration of benefits for the secondary mental impairment, regardless of the actual extent of disability, is capped at a maximum of between 7 and 200 weeks, depending on the body part originally injured. For Worker, whose original injury was to her knee—a body part listed on the schedule—benefits are capped at 150 weeks. Section 52-1-43(A)(30).

{21}　In contrast, the duration of benefits for a secondary physical impairment is based on the nature and severity of the secondary impairment itself, not on the body part originally injured, and not on the severity of the original injury. *Compare* § 52-1-42(A)(1)-(2), *with* (A)(4). If the secondary impairment is an unscheduled, whole body impairment,[6] total disability benefits continue for the worker's lifetime,

---

[5]Sections 52-1-41(C) and -42(A)(4) state identically: "For disability resulting in secondary mental impairment, the maximum period of compensation is the maximum period allowable for the disability produced by the physical impairment, as set forth in Section 52-1-26 [(for nonscheduled injuries)] or 52-1-43 . . . [(for scheduled injuries)]." Section 52-1-41(C) specifies the maximum duration of compensation for a secondary mental impairment resulting in total disability and Section 52-1-42(A)(4) specifies the maximum duration of compensation for a secondary mental impairment resulting in partial disability.

[6]Mental illness is not listed on the schedule of specific body parts found in Section 52-1-43 and is not treated by the Act as a scheduled injury. *See Breen*, 2005-NMSC-028, ¶ 10 n.2 (noting that mental illness is not a scheduled impairment under the Act).

11

§ 52-1-41(B); for a partial disability, the maximum duration of benefits is 700 weeks, depending on the percent of impairment. Section 52-1-42(A)(1), (2).

{22} Because the Act limits the duration of disability benefits based solely on whether a compensable impairment, identically caused by an original work-related injury, is a mental or physical impairment, Worker has established disparate treatment of similarly situated workers.

## II. Workers With a Mental Impairment Are a Sensitive Class, Meriting Intermediate Scrutiny

{23} The second element of the equal protection test—determining the level of scrutiny to apply—has been conclusively resolved by our Supreme Court's decision in *Breen*. *See* 2005-NMSC-028, ¶¶ 18-29. The *Breen* Court adopted intermediate scrutiny for discrimination against persons with mental disabilities. *Id.* ¶ 28. Our Supreme Court in *Breen* directed that our "courts should be sensitive to possible discrimination against persons with mental disabilities contained in legislation that purports to treat them differently based solely on the fact that they have a mental disability." *Id.* We need not repeat our Supreme Court's thorough analysis, reviewing the history of discriminatory treatment of people with mental disabilities. *Id*. ¶¶ 18-29.

## III. The Classification Is Not Substantially Related to an Important Government Interest, as Required by Intermediate Scrutiny

12

{24}    The third element of the equal protection test requires the application of intermediate scrutiny to the challenged statutory terms. Under New Mexico's intermediate scrutiny test, "[the c]hallenged legislation will be upheld if the classification is substantially related to an important government interest." *Id.* ¶ 30. Merely showing a rational basis for the classification is not enough.

{25}    The burden is on the party supporting the legislation's constitutionality (here Employer) to establish that the classification is substantially related to an important government interest. *Marrujo v. N.M. State Highway Transp. Dep't*, 1994-NMSC-116, ¶ 11, 118 N.M. 753, 887 P.2d 747. The party supporting the constitutionality of the legislation must show that the discriminatory classification is based on a " 'reasoned analysis rather than [arising] through the mechanical application of traditional, often inaccurate assumptions.' " *Breen*, 2005-NMSC-028, ¶ 30 (quoting *Miss. Univ. for Women v. Hogan*, 458 U.S. 718, 726 (1982).

{26}    A number of government interests were proposed by the employer in *Breen* as support for the Legislature's decision to treat mentally impaired workers differently than similarly situated physically impaired workers. The *Breen* Court considered the government's interest in the financial viability of workers' compensation; the greater possibility of fraudulent claims for mental illness; and the greater uncertainty in diagnosis and evaluation of mental impairments. 2005-NMSC-028, ¶¶ 33-49. The Court rejected each of these arguments. *See id*. In

13

the case of possible fraudulent claims, the Court held that the Act's requirements for proof of a compensable disability adequately protected against fraud. *See id.* ¶¶ 40-44. Although the Court acknowledged that cost savings are an important governmental interest, it found that saving by denying comparable benefits to workers with mental disabilities who had met the eligibility requirements of the Act was not substantially related to the Act's purpose of compensating workers disabled by work-related injuries for lost earnings. *See id.* ¶¶ 34, 47-48. Finally, the Court rejected the claim that the mental impairments were harder to diagnose and evaluate. The Court found that adequate methods of evaluation were available and were already being used successfully by the workers' compensation system, and were being reviewed on appeal without difficulty. *Id.* ¶ 45.

{27}     Beyond the arguments that were rejected in *Breen*, Employer argues only that there is a logical relationship between the duration and severity of a secondary mental impairment and the nature of the physical impairment that is the cause of the mental impairment. Employer's claim, presented without citation to authority, simply is not sufficient to establish the substantial relationship between an important government interest and the challenged classification required by intermediate scrutiny. It is nothing more than a claim that there may be a rational basis for the classification.

14

{28} Employer has not carried its burden of showing that the Act's disparate treatment of mentally impaired workers, a sensitive class, is substantially related to an important government interest.

**CONCLUSION**

{29} We, therefore, conclude that Sections 52-1-41(C) and -42(A)(4) of the Act treat workers with secondary mental impairments differently than similarly situated workers with secondary physical impairments, in violation of the Equal Protection Clause of the New Mexico Constitution. We remand for proceedings consistent with this opinion.

{30} **IT IS SO ORDERED.**

_____
**JANE B. YOHALEM, Judge**

**WE CONCUR:**

_____
**J. MILES HANISEE, Chief Judge**

_____
**GERALD E. BACA, Judge**